### BELL, ADMINISTRATOR OF STOLL, v. PRICE.

1. A paper containing a summary of the accounts between the parties, delivered by the arbitrator with the award, on a motion to set aside the award, considered as part of the award.

2. On motion to set aside an award, the submission having been made a rule of court for that purpose, it is not competent to read an *ex parte* statement of the oral evidence before the arbitrators, proved by the oath of counsel to contain the substance of the testimony there delivered.

3. When there has been no corruption or partiality in the arbitrators or fraud practised by the party, the award is conclusive, and the court will not, on such motion, inquire whether the arbitrators have judged right or wrong on the facts.

4. Courts will not interfere with an award for mistake in law, unless it appears,

on the face of the award or by the statement of the arbitrator, that he had meant to decide according to the legal rule, and had mistaken it.

5. Mistakes of fact, which can be taken advantage of on such motion, must be mere mistakes, as miscalculation of an account, or the like, and not an erroneous conclusion of the judgment on the part of the arbitrator. They must appear on the face of the award or the accompanying papers, or be established by the oath of the arbitrator.

6. On an arbitration betweeen a surviving partner and the administrator of a deceased partner, an award that the former should pay off and discharge a bond given during the lifetime of the latter by both partners, and therefrom save harmless and indemnify the representatives of the deceased partner, is sufficiently certain.

The parties in this cause had submitted the matters in difference between them to the determination of three arbitrators, Robert Hamilton, Joseph Linn, and John D. Everett. After hearing the parties and their evidence, two of the arbitrators made the following award :

"Award between John Bell, administrator of the estate of Joseph Stoll, deceased, and Samuel Price, made the twenty-second day of January, eighteen hundred and forty-four ; the said parties having by their agreement, made on the sixteenth day of May last past, mutually agreed to submit all matters in difference between the said Samuel Price, and the said John Bell, as administrator of the estate of Joseph Stoll, deceased, in which were to be included the accounts and dealings between the said Samuel Price and the said Joseph Stoll, in his lifetime, as partners in trade, and all other accounts and dealings between the said Samuel Price and the said Joseph Stoll, in his lifetime, to the award and final determination of Robert Hamilton, Joseph Linn, and John D. Everett, or any two of them, arbitrators, by them chosen ; and the said arbitrators, having been first duly sworn faithfully and fairly to hear and examine the matter in difference between the said parties, and make a just and true award, according to the best of their skill and understanding ; and having heard the proofs and allegations of the said parties, and considered the same, we the subscribers, two of the said arbitrators, do hereby make and publish our award of and concerning the matters to the said arbitrators submitted as aforesaid, as follows :

*Firstly.* We do award, that the said Samuel Price do pay to

the said John Bell, administrator as aforesaid, the sum of three hundred and forty-one dollars and ninety-three cents, on or before the first day of April next, with interest thereon from this date.

*Secondly.* We do award, that the said sum is in full satisfaction and discharge of all demands and controversies by and between the said Samuel Price and the said John Bell, as administrator as aforesaid, and of all demands between the said Samuel Price and Joseph Stoll, in his lifetime ; and we do award, that all actions, suits, controversies, quarrels, and demands whatsoever, between the said Samuel Price and John Bell, as such administrator as aforesaid, existing at the date of the said submission to the said arbitrators as aforesaid, cease and be no further prosecuted.

*Thirdly.* We do award, that upon the payment of the said sum of money aforesaid to the said John Bell, administrator as aforesaid, that he deliver up to the said Samuel Price, his executors or administrators, to be cancelled, a certain bond and mortgage, bearing date on the first day of April, eighteen hundred and twenty-six, given and executed by the said Samuel Price to the said Joseph Stoll, to secure the payment of the sum of six thousand seven hundred and fifty dollars.

*Fourthly.* We do award, that the balance remaining due and unpaid upon a certain bond and mortgage, given and executed by the said Samuel Price and Joseph Stoll to Usall C. Hagerty, bearing date the twenty-fourth day of June, eighteen hundred and twenty-four, to secure the payment of twenty-five hundred dollars, is now the proper and respective debt of him, the said Samuel Price, and that he shall pay off and discharge the same, when demanded by the holder, so as that he save harmless and indemnify the representatives and estate of the said Joseph Stoll therefrom.

*Fifthly.* We do award, that the services and expenses of the said arbitrators, amounting to the sum of one hundred and fifty-six dollars, be paid by the said parties equally, and that, if the same be paid wholly by one of the said parties to the said arbitrators, that then the other party do pay to the party who shall pay the said arbitrators the one-half thereof, on demand, and that all other costs and charges of either party, be borne and paid by the party incurring the same.

In witness whereof, we have hereunto set our hands and seals, this twenty-second day of January, eighteen hundred and forty-four, above written.

ROBERT HAMILTON, [L. s.]
JOSEPH LINN, [L. s.]"

The submission, pursuant to its terms, was, under the statute, made a rule of court in the Sussex circuit. A rule to show cause why it should not be set aside was taken, with leave to take affidavits. The reasons filed for setting aside the award were in substance as follows:

1. Because the award is not in pursuance of the submission.

2. Is not mutual.

3. Is not certain.

4. Is not final.

5. Because the said arbitrators who signed said award determined upon the matters in difference in the absence of J. D. E., one of the arbitrators, without notice to him of the time and place of said determination.

6. Because the arbitrators were not sworn.

7. Because the arbitrators, on the hearing, rejected legal, and received illegal evidence.

8. Because the arbitrators made a plain mistake in allowing a credit to the said Samuel Price of $701.

9. Because the arbitrators committed a plain error in allowing to the said Samuel Price the sum of $1000, as a credit.

10. Because the arbitrators committed a plain error in the computation of interest.

11. Because the arbitrators did not impartially hear and determine said matter in difference.

12. Because the arbitrators committed plain and palpable errors, both in law and fact.

In the depositions taken, it was shown that H. D., a justice of the peace, was present to swear the arbitrators, but not being able to repeat the oath, one of the arbitrators, with the consent of the justice, repeated it, all three having their hands upon, and kissing the book. The justice did not hold the book, repeat the oath, or certify it; that he offered to certify it, but was told that it was unnecessary.

The depositions further tended to show that there was a mistake in one or two of the credits allowed to Price, and that, on the whole facts of the case, they ought not to have been allowed. One of the counsel before the arbitrators was sworn, and testified that a state of the case, drawn by him, and made an exhibit, contained the whole of the testimony taken before the arbitrators. The arbitrators, at the making of thè award, had drawn and signed a statement in figures, entitled "general result," exhibiting the manner in which they had arrived at their determination, which statement was delivered with the award.

The Circuit Court, having referred the case to the Supreme Court for their advisory opinion, (a) in accordance with that opinion, refused to set aside the award, holding that the state of the case, purporting to contain the oral testimony, could not be read on the argument of the rule, and discharged the rule.

From this decision of the Circuit Court a writ of error was brought, removing the proceedings into this court. No objection being made to the legality of the writ of error in this cause, the argument came on upon the reasons assigned for error, which were in substance the same as the reasons filed in the circuit, adding thereto, as an additional reason, the rejection of the state of the case by the Circuit Court on the argument of the rule.

*Potts* and *W. Pennington*, for plaintiff in error.

The court below erred in overruling the "state of the case" containing the substance of the oral testimony given before the arbitrators.

But it erred in not setting aside the award, because—

1. The arbitrators were not sworn.

2. The award was not final.

3. The arbitrators did not act fairly and impartially.

4. The arbitrators made gross mistakes, by which the estate of Stoll was greatly injured. The items in which the mistakes were made appear on the accompanying calculation, and that paper must be considered as part of the award. *Watson on Arb.* 281 (*Law. Lib.* 1848) ; 3 *East* 18.

(a) See case reported 1 *Zabr.* 32.

One year's interest seems to have been omitted in the calculation of the sum due on the bond of Price to Stoll.

The credit of $350, paid by House on the Coursen note, should not have been allowed.

There was nothing to warrant the credit to Price of $1000 for his note payable in Sussex Bank.

The counsel cited *Bac. Abr. tit. "Arbitrament" (K)*; *Hall* v. *Hinds*, 2 *Man. & Gr.* 847 ; *Ward* v. *Dean*, 3 *B. & Ad.* 234 ; *Ames* v. *Milward*, 8 *Taunt.* 637 ; *Coxe* 105 ; *Ib.* 385 ; *Pen.* 932 ; 2 *South.* 777 ; 5 *Halst.* 7, 12, 17 ; 1 *Gr. Ch. Rep.* 301 ; 3 *Atkins* 644 ; 2 *Green* 337 ; *Kyd* 349 ; *Billings on Arb.* 227 ; 3 *Burr.* 1257 ; *Davis* v. *Getty*, 1 *Sim. & Stuart* 411 ; *Dawson* v. *Sadler*, 1 *Ib.* 537·; *Nichols* v. *Chalie*, 14 *Ves.* 265 ; *Gwinnett* v. *Bannister*, *Ib.* 530 ; 2 *Story's Eq. J.* § 1450, 1453, &c.

*Vroom* and *Dayton*, contra.

This is the first attempt ever made to review, in this mode, the merits of an award. The Circuit Court of Sussex having refused to set aside an award, the matter is somehow here by writ of error. The proceeding is very anomalous, but, waiving the question as to the propriety of the writ, there is nothing in the reasons assigned for error.

The statement of the oral testimony given before the arbitrators was *ex parte*, not authorized by the rules of the court, and not offered for any competent purpose ; it was therefore properly rejected.

In point of fact it does appear that the arbitrators were sworn, and there is nothing in the affidavits to show that they misbehaved or acted unfairly.

The award was final. In the point complained of, it was that Price should pay off and discharge a bond given by Stoll and Price, and indemnify and save harmless the representatives of Stoll. *Billings on Arb.* 135, *et seq.* ; *Byers* v. *Van Deusen*, 5 *Wend.* 268 ; *Wohlenberg* v. *Lageman*, 6 *Taunt.* 251.

The alleged mistakes bring up the question as to the powers and practice of the courts in setting aside awards under the statute. Our act (*Rev. Stat.* 113) is closely copied from 9 and

10 *W.* 3, *c.* 15, previous to which courts of common law had no jurisdiction over awards, unless in cases of references at *nisi prius.* This statute put submissions to arbitration in cases where there was no cause depending upon the same foot as those where there was a cause depending. 2 *Burr.* 701.

Courts of common law have not the same power under the statute as courts of equity at common law, or rather by virtue of their general jurisdiction, though the powers of each court under the statute are the same. Courts of equity, upon bill filed, can correct an award; not so courts of common law. The doctrine of Lord Brougham, in *Nichols* v. *Roe,* 3 *M. & K.* 431, is contrary to the rule, as previously understood in England, and has not heretofore been recognised in this state. Upon the statute courts will not enter at all into the merits of the matter referred to arbitration, nor look at the unreasonableness of an award. *Notes to Veale* v. *Warner,* 1 *Saund.* 327; 2 *Burr.* 701; 2 *Bos. & Pul.* 375; 2 *Ves. Jun.* 15.

A mistake in law, in order to impeach an award, must be apparent on its face, and courts will not take notice of matters coming up only by affidavit. But there can be no such thing as an inquiry as to matter of fact. The cases are confined to an apparent mistake in law. 1 *Taunt.* 47; 6 *Ib.* 254; 13 *East* 357; 1 *Chitt. R.* 674; 3 *Com. Bench.* 705; 9 *J. B. Moore* 666; 5 *Man. & Ry.* 3.

The case of *Hall* v. *Hinds* is somewhat peculiar, and seems to trench upon settled principle, but it was a case of gross mistake in calculation, shown by the affidavits of the arbitrators themselves. The farthest the courts have gone, has been in case of such mistake not only admitted but made to appear by the oath of the arbitrators. Where the arbitrator admitted an error, but was not sworn, the court refused to set aside the award. *Phillips* v. *Evan,* cited in *Billings on Awards* 60, *note.*

The American cases are not consistent, but in many instances they rest upon peculiar local authority and usage, as in Pennsylvania, where the courts seem to deal with awards as with verdicts. In *McKinney* v. *Newcomb,* 5 *Cow.* 425; *Bar-*

*low* v. *Todd*, 3 *John.* 369 ; *Kleine* v. *Catara*, 2 *Gallison* 61, the common law doctrine was recognized.

But the distinction must be adverted to, as to the powers of a court of equity under the statute, and its original powers under a bill filed to set aside or reform an award. In the latter case, it seems a mistake in fact may be corrected, but it must be apparent on the face of the award, or established to the satisfaction of the arbitrators, whose affidavit must be procured. *Knox* v. *Symonds*, 1 *Ves. Jun.* 369 ; *Anderson* v. *Darcy*, 18 *Ves.* 447 ; 2 *John. Ch. R.* 361 ; 1 *Gr. Ch. R.* 301 ; 8 *East* 54 ; 1 *Vern.* 157.

Lord Hardwicke was the first equity judge who laid down the principle, that a mistake in fact could be corrected ; but he was disposed to interfere only in cases of palpable mistake, as in the instance of miscalculation of an account, &c. But it was not attempted to apply correction to errors of judgment. If parties agree to refer matters to judges of their own selection, in the absence of fraud or corruption their judgment is conclusive.

But, even under the rule recognized in equity, there was no ground to set aside this award. The alleged mistakes are not apparent on the face of the award or of the accompanying paper ; but so far as there is any thing to sustain the allegation, they are altogether mere matter of evidence. But even the depositions do not show that any error was committed. The arbitrators were examined, but were not questioned as to the supposed mistakes. Had they been examined, it may be presumed they would have acknowledged the error or made such explanations as would have removed all difficulty.

CARPENTER, J. This is a writ of error, directed to the Circuit Court of the county of Sussex. The object of the writ is to review the decision of the judge of that court in refusing to set aside an award of arbitrators, the submission having been made a rule of court under the statute. The affidavits taken in the court below, under the rule for the purpose of setting aside the award, have been brought up by *certiorari* on allegation of diminution, and used on the present argument as ground to sustain the assignment of errors. Such application

of the writ of error seems to be a singular departure from the rules of the common law, and will give rise to no little embarrassment in practice. But the question as to its propriety has not been raised, and will not therefore be discussed.

The award was signed by two arbitrators, the third dissenting, and was accompanied by a paper entitled, "General result," which contained a sort of summary of the calculations by which the arbitrators ascertained the amount of indebtedness of Price to the estate of Stoll, the deceased partner. There were evidently other accounts and calculations, the results of which seem to have been drawn into this statement. This paper may be considered, for the purposes of the present inquiry, as part of the award.* Various grounds of error have been assigned, all except the first corresponding with the reasons filed below for setting aside the award.

The first error assigned was, that the Circuit Court, on the hearing of the rule, refused to receive and consider a paper, offered by the plaintiff in error, alleged by him to contain a statement of all the oral testimony given or offered to the arbitrators. The court was clearly right in the rejection of that paper. It was a mere *ex parte* document, purporting to contain the *substance* of the oral testimony before the arbitrators, compiled from the notes and memory of the plaintiff's counsel, but under no authority derived from the rules and practice of the court or the consent of the opposite party. Such statement could not be made evidence because it was sworn to contain the substance of the oral testimony. Rules to take affidavits to be used on motion to set aside an award must be to substantiate some particular exception, not to bring up the whole case, in order to show that the award was against the weight of evidence. It was therefore further not offered for any competent purpose. It was no part of the duty of the court to review the merits of the award by an examination of the evidence before the arbitrators. Under the rules of the common

---

* See *Kent* v. *Elstob*, 3 *East* 18 *acc.* Still the rule does not appear to be very clearly settled as to how far extrinsic statements by arbitrators shall be received to impeach their award. See *Russell on Arb.* 301 (*Law Lib.* 1849); *Ward* v. *American Bank*, 7 *Metc.* 490; *Jones* v. *Boston Mill Co.*, 6 *Pick.* 154.

law, as here understood, the decision of the arbitrators upon the evidence is final, and not subject to be reviewed by the courts by an examination of that evidence. That they have arrived at an unreasonable judgment, is no ground to impugn their decision, unless, indeed, the error be such as to show corruption and misconduct.

The allegation, that the arbitrators were not sworn, also assigned for error, may be passed with slight remark, as we think the fact that they were duly sworn sufficiently appears by the affidavits read on the hearing of the rule in the Circuit Court. The ground chiefly relied on to impeach the award was, that the arbitrators, as alleged, made a plain and palpable mistake in allowing to Price certain specified items of credit, which items appear on the face of the statement accompanying the award.

Indeed the controversy, in regard to this point, may be narrowed down to the alleged mistake in the credit of $350.50 allowed to Price. The objection here taken, that one year's interest on the bond was not allowed to the estate of Stoll, was not raised in the Circuit Court, and certainly is not sufficiently sustained by any thing which appears on the face of the award, or the accompanying calculation, nor even by any thing to be found in the depositions. It is a matter of the merest conjecture.

The credit allowed to Price for a note of $1000, payable at the Sussex Bank, may or may not have been properly allowed. There seems to be nothing to show that it was improperly allowed, either on the face of the documents just referred to or in the affidavits, supposing that we can look into those affidavits for such purpose.

To return to the alleged mistake, chiefly pressed on the argument. On the statement styled " General result," Price was credited by the following item : " Then paid by House for Price to A. Coursen half $701—$350.50." A note of Price and Stoll to Coursen was produced, and made an exhibit in the Circuit Court, which after some prior payments, perhaps out of the partnership funds, appeared, by the affidavit of one House, to have been discharged by the payment of this $701 in behalf of Price. Then the question seems to be, although

not so presented, whether the estate of Stoll ought not to have been credited ·by $400, paid by Stoll to Price, as appears by the receipt of Price, endorsed on the same Coursen note. But it is very evident that if any error has been committed in regard to this note, and the allowance of the credit in question, the error does not appear on the face of the award or the accompanying paper, but is shown by affidavits, and is a matter of extrinsic evidence. The item certainly appears on the face of the calculation, but that it was improperly allowed to Price, if shown at all, is only made out by the affidavits taken and read on the hearing.

Mr. Justice Whitehead, in the advisory opinion delivered by him in the Supreme Court, seems to assume it as very probable that an error was committed by the arbitrators in relation to this credit. We are far from being clear that the case, as presented to us, will warrant such supposition. We do not know what was before the arbitrators. The inspection of books, the admissions of parties, inferences from facts of which we have no knowledge, or other sources of information hidden from us, may have furnished sufficient ground for their action, even supposing that this sum of $400 was not in fact carried to the credit of the estate. But it may have been allowed in some suitable mode. The statement referred to, as accompanying the award, was a calculation of the amount due from Price to the estate of Stoll, upon the bond and mortgage given by the former. The calculation states the indebtedness of Price on the bond down to the period of Stoll's death, when a rest is made. Then occur items of credit, of which this is one : " Then paid by balance of individual account $141.89." This item of credit shows that other matters of account between Price and the estate of Stoll had been adjusted to this period, and the balance due him had been carried to his credit on the bond. The calculations which produced this credit are not before us ; but if the estate of Stoll was entitled to the credit of $400, it is quite possible, indeed quite probable, that it was there given. The whole argument, as to the alleged error or mistake, seems to rest upon the assumption that the credit should have been given in a particular mode or in a particular

Bell v. Price.

connection. But, if due to the estate of Stoll, it might naturally and properly have been allowed in the mode suggested, and we are unwilling to assume that there is even a *prima facie* case shown by the affidavits, the arbitrators themselves not having been examined as to this point.

But the remarks just made upon the merits of the award are rather in answer to the arguments of the plaintiff's counsel than in connection with the true grounds upon which awards can be set aside, when made a rule of court under the statute. The allegation of error rested for its support upon extrinsic evidence, and the alleged error did not appear either on the face of the award or the accompanying paper, or by the admissions of the arbitrators. To enter upon such a case into the merits of the award, would be to turn the proceeding under the statute into an appeal from the judgment of the arbitrators. Courts have not been entirely consistent as to the grounds upon which they will set aside awards good upon their face, but we are not aware that any court has gone to this length. Where there has been no corruption or partiality in the arbitrators, or fraud practised by the party, the award is conclusive, and the court will not take upon itself to inquire whether the arbitrators have judged right or wrong upon the facts; the court will not attempt to correct their judgment upon the facts. *Underhill* v. *Van Cortland*, 2 *John. Ch. R.* 361; *Morgan* v. *Mather*, 2 *Ves. Jun.* 15.

The view taken by the judge who delivered the opinion of the Supreme Court, as to the grounds of setting aside an award, seems to be substantially correct, confining his observations to the case before the court and to the proceedings under the statute. We are not called upon to make any inquiry as to the power of courts of equity, upon bill filed, to set aside an award. The inquiry here relates to the power of the court under and by virtue of the statute, the submission having been made a rule of court; and in such case it may be taken for granted that there is no difference whether it be made a rule of a court of law or a court of equity. The only authority in either case, where proceeding by rule, is under the statute, and the only mode of relief is by setting aside the award.

In regard to mistakes in law courts will not interfere, unless it appears that the arbitrators meant to decide according to the legal rule, and had mistaken it; and it must so appear on the face of the award or by the statement of the arbitrators. If arbitrators mean to decide according to law, but mistake the rule in some palpable and material point, in such case the award will be set aside, as not conformable to their real judgment and intention. But, unless they intend to be bound by the legal rule, courts will not withdraw the matter from the tribunal which the parties themselves have selected. The courts will not undertake to inquire whether the conclusion was right or not, unless they can see that, professing to decide according to law, the arbitrators had decided contrary to law. In a late case, in which an objection, not apparent on the face of the award, was attempted to be shown by affidavits, other than of the arbitrator himself, the court refused to interfere with his decision. *Fuller* v. *Fenwick*, 3 *C. B.* 705.

So as to mistakes in fact, those which can be taken advantage of in this mode are comprised within very narrow limits, and must appear on the face of the award itself or in some authentic shape. They must be such as the arbitrators would admit, as miscalculation in an account, or the like, and certainly unless they appear on the face of the award, or the accompanying paper, must be made out to their satisfaction. In such case, also, the award is not what the arbitrator intended it to be, *viz :* the result of his judgment. The safe rule seems to be that acted upon by Lord Thurlow, who always required the oath of the arbitrator himself to establish or admit the alleged 'mistake.

In a loose sense, the arbitrators may be said to have fallen into an error or mistake when they have judged wrong upon the evidence before them. But this is not the kind of error or mistake intended, because so far as they have exercised their judgment it is conclusive, though to other minds the result might seem palpably erroneous. The mistake must be of a different character, something which has deceived or misled them, and not a mere mistake in drawing conclusions of fact from observation or evidence. *Hall* v. *Hinds* (2 *M. & G.*

847) was a case of miscalculation made to appear to the satis-
faction of the arbitrators, and established by their affidavits,
the mistake, though gross, not being apparent on the face of
the award. It was considered as a case of mere clerical mistake,
by which the arbitrators expressed on the award not the in-
tention of their own minds, but one widely different. But the
carelessness was so gross, and the mistake so great, as, accord-
ing to the opinion of the court, to merit the epithet of miscon-
duct on the part of the arbitrators. The award was set aside.
But the courts in England have expressed their disposition to
go no farther. In *Phillips* v. *Evans* (3 *M. & W.* 309), the ar-
bitrator made a mistake in not allowing a proper credit, which
he admitted to the party on the error being pointed out to him,
and wished the matter referred back to him that he might cor-
rect it, though to this the opposite. party objected. The court
refused to set aside the award, as the error did not appear on
the face of the award, and the arbitrator had not made any
affidavit himself admitting the mistake. The court refused to
interfere without the oath of the arbitrator. See *Russell on
Arb.* 295, *et seq.* (*Law Lib.* 1849); *Watson* 281 (*Law Lib.*
1848); *Ward* v. *American Bank,* 7 *Metc.* 489 ; *Boston Water
Power Co.* v. *Gray,* 6 *Ib.* 131, 181 ; *Kleine* v. *Catara,* 2 *Galli-
son* 61, 69.

In this case the arbitrators were examined and their depo-
sitions taken by the plaintiff in error, but no question was put
to them as to the alleged mistake. Under the sound and safe
principles to which I have referred, we think, without their
admission of the error, the court was right in refusing to set
aside the award. The whole case is obviously an attempt to
review, in this mode, the decision of the arbitrators, and to
correct an alleged error in their judgment, without calling upon
them to admit or explain the alleged error. To admit such pro-
ceeding would be to rehear the merits of the award, and, as
before said, it would be in effect an appeal from the judgment
of the arbitrators. This the settled decisions of the courts,
founded in policy and justice, will never permit.

One word only remains to be said upon the single remain-
ing point. We see no difficulty as to the final character of the

Bell v. Price.

award. The arbitrator, among other things, awarded that Price should pay off and discharge the balance due on a certain bond given by Stoll & Price, and save harmless and indemnify the representatives of Stoll from the same. The award is direct and explicit as to the duty, and the remedy clear in case it was not performed.

Judgment affirmed.

*For affirmance*—CARPENTER and OGDEN, Justices SPEER, PORTER, SINNICKSON, and WALL, Judges—6.

*For reversal*—The CHANCELLOR, NEVIUS, Justice, and SCHENCK, Judge—3.

The CHIEF JUSTICE, RANDOLPH, J., and Judge McCARTER did not sit on the argument of the cause.

CITED *in Taylor* v. *Sayre,* 4 *Zab.* 650; *Eames* v. *Stiles,* 2 *Vr.* 495.