[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 560 
Applicant labor union moves to confirm an arbitration award made pursuant to a submission agreement executed by the union and respondent employers' association to resolve a labor dispute as to wage increases.
The employers' association is the bargaining agent for the several owners of buses operating on the Bergen Avenue bus route in Jersey City, and the union represents the drivers employed on the buses.
A collective bargaining agreement effective from April 1, 1946, contained wage provisions including the following clauses of Section 2 A pertinent here:
"SECTION 2A, WAGES:
"The `Operators' and the Owners agree that on certain of the motor buses on the Bergen Avenue route there are operators who are presently employed for but five (5) days during each week, and that there are certain other operators whose work week consists of six days. It is agreed also that the usual work day for all operators shall be nine and three-quarters hours (9 3/4) hours. *Page 561 
"The wage scale for steady operators shall be eighty-six (86c) cents per hour for the first eight and one-half hours (8 1/2) hours in each day of employment and time and one-half the regular rate of pay for all work performed in excess of eight and one-half hours per day.
"PROVIDED, HOWEVER, that a minimum weekly wage of fifty-three dollars and fifty cents ($53.50) per week shall be paid to operators who work six days, consisting of the usual nine and three-quarter (9 3/4) hours or an aggregate of fifty-eight and one-half (58 1/2) per six day work week;
"AND PROVIDED, HOWEVER, that a minimum weekly wage of Forty-four Dollars and sixty cents ($44.60) per week shall be paid to operators who work five days, consisting of the usual nine and three-quarter (9 3/4) hours or an aggregate of forty eight and three quarters hours (48 3/4) per five day work week."
The agreement was amended as of April 1, 1947, and, as amended, carried forward the quoted clauses of Section 2A, changed, however, to increase the basic hourly wage rate from 86 cents to 90.76 cents per hour and to reflect this by increasing the minimum weekly wages from $53.50 to $56.50 for six day operators, and from $44.60 to $47.10 for five day operators.
The minimum weekly wage of the six day drivers was computed as the sum of 58 1/2 hours (6 days x 9 3/4 hours per day) at straight time plus overtime of 7 1/2 hours (6 days x 1 1/4 hours per day) at one-half straight time, or a total of 62 1/4 straight time hours. The minimum weekly wage of the five day drivers was arrived at by adding 48 3/4 hours (5 days x 9 3/4 hours per day) to overtime of 6 1/4 hours (5 days at 1 1/4 hours per day) at one-half straight time, or a total of 51 7/8 straight time hours. The parties stipulated at the argument that because of the intricacies of operating schedules drivers on occasions do not work a full trick of 9 3/4 hours but nevertheless are paid the straight and overtime compensation for a full day.
The 1947 amendment to the collective bargaining contract also amended Section 17 of the original agreement to read as follows:
"SECTION 17.
"This agreement shall be in full force and effect, notwithstanding the date of the execution thereof from April 1, 1947 until and including *Page 562 
March 31, 1949 and shall be automatically renewed from year to year thereafter unless either party give notice to the other, in writing, not less than sixty days (60) prior to the anniversary date thereof and of its intention to terminate the contract,excepting, however, that in the event that the owners of buses on the Bergen Avenue Route in Jersey City obtain permission to charge a greater rate of fare than five cents (5c) per one way trip, prior to the expiration date of this agreement, the wage provision in this contract may be reopened upon thirty (30) days notice of intention so to do by the operators given to the owners, otherwise this contract and all of the terms and conditions herein contained and in the contract of September 10, 1946, which was heretofore made a part hereof, therein contained, shall remain in full force and effect for the said period, to wit, to and including March 31, 1949."
The Board of Public Utility Commissioners permitted the bus owners to increase the bus fare from 5 cents to 7 cents effective July 4, 1948. The Union promptly demanded negotiations for a wage increase under the reopening provision of the amended Section 17. Negotiations ensued over a period of months but without result. The parties then agreed to arbitrate the issue and invoked the aid of the State Board of Mediation to facilitate the arbitration. On October 26, 1948, a submission agreement was executed on the standard form employed by the State Board and reads as follows:
"We, the undersigned, hereby agree to submit the following controversy to arbitration:
"What increase, if any, under Section 17 of the supplementary agreement between the parties shall be given to the operators for the Bergen Avenue Bus Owners' Association; if an increase is granted should it be retroactive and, if so, to what date?
"A collective bargaining contract exists between Bergen Avenue Bus Owners' Association and Int'l Association of Machinists, Lodge 1292, Ind. a copy of which is annexed hereto.
"We hereby agree to submit such controversy for decision to:
 Maurice S. Trotta
"We further agree that we will faithfully abide by and perform any award made pursuant to this agreement, and that such award shall be binding and conclusive upon us."
A hearing was held and the arbitrator took testimony as to the pros and cons of the merits of the Union's wage demand. On February 11, 1949, he filed a written opinion and made an award as follows: *Page 563 
"After taking into consideration the general pattern of wage increases in the bus transportation industry in Northern New Jersey area, the wage rates of the Bergen Avenue Line as compared with the wage rates paid by other bus companies, and the increased cost of living I award a wage increase of twenty cents per hour retroactive to August 16, 1948."
The owners first argue that this was an arbitration under the Public Utilities Labor Disputes Act, R.S. 34:13B-1 et seq.,
and is unenforceable because that law was declared wholly unconstitutional. State v. Traffic Telephone Workers Federationet al., 2 N.J. 335, 66 A.2d 616 (1949). That case held the statute to be unconstitutional because it delegated legislative power to an administrative agency (a statutory arbitration board) without providing adequate standards to guide the agency's deliberations. The Legislature on June 16, 1949, promptly amended the statute to remedy this defect. Laws 1949, chapter 308,First Special Session, Senate 4 Scs.
The owner's point has no merit. The arbitration proceeding which resulted in the award before the court was not a statutory compulsory arbitration under the Labor Disputes Law but was a voluntary arbitration under an agreement freely executed by the parties. It may be that the owners view it as an agreement they had to make to escape seizure of their properties and compulsory arbitration under the statute, but, if so, this does not make the submission agreement an involuntary deed. In fact the whole scheme of the Public Utilities Labor Disputes Act emphasizes the desirability of the employment of voluntary techniques to settle public utility labor disputes and contemplates the use of compulsory procedures only as a last resort when necessary to protect the paramount public interest. The whole context of the statute emphasizes that industrial peace in the utilities field should be maintained through intelligent and reasoned use of the voluntary tools of negotiation, conciliation, mediation and voluntary arbitration. The sanctions of seizure and compulsory arbitration and the attendant prohibitions of stoppages and strikes are invoked only when the paramount public interest is threatened by an actual or imminent interference *Page 564 
with service. No interference with service existed or was threatened at the time the parties entered into the arbitration agreement; at least the prerequisite executive proclamation as to the existence of an emergency required under the act before the compulsory arbitration sections came into play was not promulgated by the Governor. The effect of the signing of the voluntary submission was to postpone if not to avoid the creation of a situation of a threat to the public interest through interruption of service, the existence of which is the essential ingredient to the operation of the compulsory sanctions of the statute.
There remains to be considered the source of the court's authority to confirm this award, and whether, if the power exists, it should be exercised favorably to the motion on the facts presented.
There are two voluntary arbitration statutes which refer expressly to labor disputes and three general statutes which apply both to commercial and labor disputes.
The labor disputes arbitration statutes are R.S. 34:13-1 to 9 (Laws 1886, pp. 315 et seq.) and R.S. 34:13A-7 (Laws
1941, c. 100, p. 231). The former is expressly limited to labor disputes between employers and employees "engaged in manufacturing" and is not pertinent here. The latter is a section of the New Jersey Labor Mediation Act and while it provides that a labor controversy not settled by negotiation or mediation under the act "may, by agreement of the parties, be submitted to arbitration," it is silent as respects the award and provides no proceeding to confirm or vacate it.
Two of the three general arbitration statutes likewise need only be mentioned. R.S. 2:32-54 to 58 (Laws 1898, p. 580,et seq.) relates to rules of reference in certain pending court actions, and R.S. 2:40-1 to 9 (Rev. 1877, p. 34) concerns submissions which are made a rule of a court of record, which is not the case as to the submission being dealt with here.
The third general arbitration statute, R.S. 2:40-10 to 26 (Laws 1923, c. 134 p. 291) is the source of the court's power to consider the instant application. That this statute embraces labor disputes arbitrations generally is well settled. *Page 565 Gould Storage Battery Corp. v. United Elec. Radio Mach.Workers, Local No. 108, 137 N.J.L. 522; United Elec. Radio Mach. Workers, Local No. 420, v. Walter Kidde Co.,136 N.J.L. 544; Stein v. Local 680 of Milk Drivers Dairy Emp. ofN.J., 141 N.J. Eq. 226; United Elec., etc., Local 411, v.National Pneumatic Co., 134 N.J.L. 349. Moreover, Section
2:40-10 provides that "a written agreement to submit an existing controversy to arbitration pursuant to section 2:40-11 shall be valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract."Section 2:40-11 provides (to the extent material here) that "two or more persons may submit in writing to arbitration a controversy existing between them at the time of their agreement to submit, which arises out of a contract." The applicability of these sections to the submission in this case is apparent.
The application to confirm the award herein was made within three months from the date of the award and is therefore timely within the requirements of R.S. 2:40-18.
The award should be confirmed unless it is tainted by one of the infirmities enumerated in R.S. 2:40-19. The owners argue that the award is tainted because the arbitrator made a mistake of fact and that that mistake is fatal to the award. No formal motion to vacate the award has been made, but I am satisfied the statutory grounds for vacation enumerated in R.S. 2:40-19 may be asserted in opposition to a motion to confirm an award. This is the interpretation given the New York statute which was the source of the New Jersey law. Wilkins v. Allen, 169 N.Y. 494;Conway v. Roth, 179 App. Div. 108.
The award is impeachable under R.S. 2:40-19 if procured "by corruption, fraud or undue means." It is conceded by the owners, indeed strongly emphasized, that the award is not assailed upon any ground of corruption or fraud or misconduct of the arbitrator. Both parties agree that the arbitrator conscientiously performed a valuable public service. The owners rely on the argument that the arbitrator made a mistake of fact which constituted procurement of the award by *Page 566 
"undue means" as that phrase has been interpreted in our cases.
The presumption is that an award is usually unassailable, operates as a final and conclusive determination, and, however disappointing it may be, is binding on the parties. Deakman v.Odd Fellows Hall Ass'n, 110 N.J.L. 304; Eastern EngineeringCo. v. Ocean City, 11 N.J. Misc. 508; Held v. Comfort BusLine, 136 N.J.L. 640. Every intendment is indulged in favor of the award and it is subject to impeachment only in a clear case. A mere showing that the arbitrator came to a conclusion of fact erroneously does not warrant setting aside the award upon the ground of mistake. Igoe Bros. v. National Ben Franklin Fire Ins.Co., 110 N.J. Eq. 373.
Mr. Justice Heher, in Held v. Comfort Bus Line, supra,
succinctly stated the elements which must be present to impeach an award for a mistake of facts constituting "undue means." He said, at pp. 641 and 642:
"The phrase `undue means' comprehends two other distinct classes of cases — i.e., (1) where the arbitrator meant to decide according to law, and clearly had mistaken the legal rule, and the mistake appears on the face of the award or by the statement of the arbitrator; and (2) where the arbitrator has mistaken a fact, and the mistake is apparent on the face of the award itself, or is admitted by the arbitrator himself. Bell v.Price, 22 N.J.L. 578, 590; Taylor v. Sayre and Peterson, 24Id. 647; Leslie v. Leslie, 50 N.J. Eq. 103. Ordinarily, a mistake or error of law or fact is not fatal unless there is a resulting failure of intent or the error is so gross as to suggest fraud or misconduct. Every intendment is indulged in favor of the award; and it is subject to impeachment only in a clear case. In the absence of misconduct or want of good faith on the part of the arbitrator, the mere fact that the award seems excessive or inadequate is not sufficient to warrant judicial interference. Hewitt v. Lehigh and Hudson River Railroad Co.,57 Id. 511; West Jersey Railroad Co. v. Thomas, 23 Id. 431. The nature of an impeachable error or mistake is made manifest by the following excerpt from the opinion of Mr. Justice Carpenter in Bell v. Price, supra (at p. 590): `In a loose sense, the arbitrators may be said to have fallen into an error or mistake when they have judged wrong upon the evidence before them. But this is not the kind of error or mistake intended, because so far as they have exercised their judgment it is conclusive, though to other minds the result might seem palpably erroneous. The mistake must be of a different character, *Page 567 
something which has deceived or mislead them, and not a mere mistake in drawing conclusions of fact from observation or evidence.'"
There is nothing in the record here to suggest that the arbitrator made a mistake of fact of the kind which is a ground for impeachment of the award as the rule is laid down by Mr. Justice Heher. The owners apparently contend that the effect of the language used by the arbitrator, viz.: "I award a wage increase of 20 cents per hour retroactive to August 16, 1948," is to supplant the whole of Section 2A of the contract with a simple provision fixing an hourly wage rate of $1.1076 per hour (90.76 cents plus 20 cents). They say this extinguishes the minimum weekly wage provisions of Section 2A and that because the parties never intended this, there is a "failure of intent" and a mistake of fact vitiating the award. They deplore the extinguishment of the weekly wage provisions because operating schedule problems make the retention of such provisions essential to the maintenance of harmony, not only between the owners and drivers, but also among the owners themselves.
Assuming that the arbitrator did intend to substitute a single provision of an hourly rate of $1.1076 for the whole of Section
2A and to extinguish the minimum weekly wage provisions, it is debatable whether this is a "mistake of fact" within paragraph (a) of R.S. 2:40-19. The challenge would appear to be more accurately grounded under paragraph (d) of that section as assailing the award because the arbitrator "exceeded or so imperfectly executed his powers that a mutual, final and definite award upon the subject matter submitted was not made."
However, I find that the award is unimpeachable whether the attack is based on paragraph (a) or paragraph (d), or both, of the statute. It is quite evident that the parties intended the arbitrator to decide whether the basic rate of 90.76 cents per hour should be increased and, if so, by how much, and, further, that any award of a higher rate would implicitly carry with it an obligation on their part to reflect the increased rate in higher minimum weekly wages computed according to the contract formula. The phrasing of the submission *Page 568 
when read in light of the background relationship of the parties clearly contemplates this. Thus, the only reasonable interpretation of the parties' agreement and the award is that the weekly minima are to be increased to reflect the 20 cents per hour and be changed from $56.50 to $68.95 for six day drivers and from $47.10 to $57.50 for five day drivers. This is precisely the procedure the parties themselves followed when they increased the hourly rate from 86 cents to 90.76 cents at the time of the 1947 amendment of the contract.
The owners reveal the true reason for their dissatisfaction with the award by proposing what they characterize as an "equitable interpretation." They suggest that the award be interpreted as requiring the parties to continue the minimum weekly wage provisions but that the computation of the increased rates be at a straight time basis for 58 1/2 and 48 3/4 hours respectively without reflection of overtime after eight and one-half hours explicitly provided by the wage clause. Their real complaint is that the 20 cents per hour increase is too much and imposes too heavy a burden of labor cost when reflected in overtime payments. But the "mere fact the award seems excessive is not sufficient to warrant judicial interference." Held v.Comfort Bus Line, Inc., supra.
I shall grant an order confirming the award. However, I shall not sign the order until a properly acknowledged award is filed.R.S. 2:40-18 requires that an award be "acknowledged or proved in like manner as a deed for the conveyance of real estate" and it does not appear that the award complies with this requirement. The court has authority under R.S. 2:40-20 to correct an award "where the award is imperfect in a manner of form not affecting the merits of the controversy" and the defect here is clearly one of form only. See McLean Piece Dye Works v. Verga,13 N.J. Misc. 416. *Page 569