West Jersey Railroad Co. v. Thomas.

THE WEST JERSEY RAILROAD COMPANY *vs.* THOMAS and others.

1. The question whether an award is excessive or unjust cannot be considered in a court of equity, nor its merits reviewed. But where the alleged errors are of a sort sufficient to set aside the award, this court will regard them, so that a determination apparently excessive may be reviewed.

2. This court has jurisdiction over awards, but it will not exercise it in case of awards which, by agreement, are made rules of court. The court in which the rule is entered has that power and must exercise it.

3. No court will review and correct an award; the only power is to set it aside for corruption, or misconduct in the arbitrators, or a plain mistake of law or fact. And if arbitrators decide against law, not by mistake, but of purpose, with the intention of making a just award, when the strict principles of law seem to them to work injustice, their award will not be disturbed.

4. If the arbitrators proceed without the knowledge of either party, and without giving him an opportunity to be heard, or if they decide without any evidence, it is such misconduct as will set aside their award.

5. When a new arbitrator is chosen by the original arbitrators, either party has the right to adduce additional testimony and additional arguments. And when either party has not only not waived such right, but before the award was made, presented his protest to the arbitrators as soon as could reasonably be done, and served an injunction upon them to restrain them from proceeding, and the arbitrators shut him out from this right and make their award in the face of the protest and injunction, it is such misconduct as will set aside the award.

5. An injunction will not be dissolved for new matter in avoidance alleged in the answer, and not responsive to the bill.

Argued on motion to dissolve injunction, upon bill and answer.

*Mr. P. L. Voorhees* and *Mr. Theodore Cuyler,* (of Philadelphia), in support of the motion.

*Mr. Browning* and *Mr. Williamson,* contra.

THE CHANCELLOR.

By an award made between the parties on the 29th of June, 1869, the complainants were directed to pay the de-

fendants $159,437, and R. D. Wood to pay to them a fund of several thousand dollars, designated the renewal fund, which he held in trust for the parties. On this award the defendants, one of whom resides in Pennsylvania, have brought a suit at law in that state. The injunction is to restrain that suit.

The Millville and Glassboro' Railroad Company, in August, 1863, leased their railroad, of about twenty-three miles in length, between Milville and Glassboro' in the county of Cumberland, to the defendants for twenty years, or until the death of either of the defendants, if that occurred within that term. The defendants were bound to keep and deliver up the road and rolling stock in as good order as they were; and were to place in the hands of a trustee $10,000 yearly, as a renewal fund, or a guaranty for the renewal or permanent repairs of the road and equipments, and to keep the buildings and rolling stock insured. They were to pay to the company as rent, one-half of the gross receipts of the road.

The lease provided that the lessors might at any time, upon three months' notice to the lessees, or either of them, put an end to the lease. In such cases, if desired by the lessees, the parties were to choose two persons to appraise the value of the contract to the lessees, and their loss and damage by such termination.

On the 1st day of April, 1868, the Milville and Glassboro' Railroad Company gave the notice required to terminate the lease, and on the same day, by authority of an act of the legislature, assigned their property and franchises to the complainants and became consolidated with them.

Disputes arose between the complainants and defendants, the former claiming damages because the road and rolling stock had not been kept in repair as required by the lease, and the latter claiming that the value of the lease to them and their damages by the termination of it were large, greater than the damages by non-repair of the road, and

that the renewal fund in the hands of Wood belonged to them.

The parties, by written articles under seal, dated December 21st, 1868, submitted these controversies, and all others that had arisen or might arise between them, to the award of H. F. Kenney and M. Baird, of Philadelphia; the award to be made, signed, and ready for delivery by the first day of July then next. It was provided, that if these arbitrators could not agree they might select a third person as umpire, who, as third arbitrator, should join them, and that these three, or any two of them, should have power to determine the matters in difference by an award, ready for delivery by the day fixed.

The arbitrators met, and in presence of the parties proceeded with the hearing. By consent, the evidence of the witnesses was reduced to writing by a stenographer, which with the documentary evidence was left with the arbitrators; and by consent, the cause was argued by the written or printed briefs of counsel left with the arbitrators. The arbitrators failed to agree, and on the 16th of June, chose R. A. Wilder, of Pennsylvania, as the umpire or third arbitrator. Wilder, after some conversation with Kenney and Baird and examining some of the evidence, on the 26th of June took the oath required by law before a master of this court at Camden, and on the 28th of June met with the other arbitrators at the office of Kenney, in Philadelphia, and there proceeded to consider the matter upon the evidence and the briefs of counsel submitted on the first hearing. They met again on the 29th at the office of Baird, when Baird and Wilder agreed upon the award which they signed. Kenney dissented, but was present when they agreed upon it, and when a draft of it was before them; he did not meet with them on the 30th, when the engrossed copy or copies of this draft were signed by them. The arbitrators gave no notice to the complainants that they had disagreed or chosen a third arbitrator, or of their meeting with him to consider and decide the case. They intended

to go on without the knowledge or presence of either party, and took this course for that purpose. The complainants. or their counsel did not know of the intended meeting on the 28th until the evening of the 26th, and on the 29th served a protest against their proceeding on the arbitrators when convened, and on the same day caused to be served on them an injunction, issued out of one of the courts of Pennsylvania, restraining their proceedings. The two arbitrators, after consulting counsel as to the effect of the injunction, signed the award on the 30th.

The complainants allege that a large part of the documentary evidence was never shown to or read by Wilder. They contend that these documents which were offered and admitted in evidence on their part, consisted of the annual report of numerous railroad companies in the United States, which show that it generally takes much more than fifty per cent. of the gross receipts of railroads to pay the expenses of running and keeping them in repair, and would, if read by Wilder, have shown to him that a lease like this, reserving fifty per cent. of the gross receipts as rent, could be of no value, but must be a loss to the lessees.

The question whether this award was excessive or unjust cannot be considered here; its merits cannot be reviewed. But this view of the case may show that this court ought not to disregard any errors of the sort that are sufficient to set aside the award, so that a determination apparently excessive may be reviewed.

The statement of the bill that this evidence was not shown to Wilder, or considered by him, is not verified by the oath of any one who had knowledge of the fact. It is denied in the answer in the same way, and not very directly, but still it is denied, and I do not feel inclined to dissolve the injunction on that ground.

This court has jurisdiction over awards; the jurisdiction is ancient and well established. It will not exercise it in case of awards which, by agreement, are made rules of any court. The court in which the rule is entered has that power, and

must exercise it. But no court will review and correct an award; the only power is to set it aside for corruption, or misconduct in the arbitrators, or a plain mistake of law or fact. And if arbitrators decide against law, not by mistake, but of purpose, with the intention of making a just award, when the strict principles of law seem to them to work injustice, their award will not be disturbed.

In this case there is no pretence of corruption or mistake, but only of misconduct. The misconduct alleged is, that the original arbitrators did not give notice to the complainants that they could not agree and had chosen a third arbitrator, or of their time and place of meeting, so that they could appear and produce evidence and be heard by counsel.

It is undoubtedly such misconduct of arbitrators as will set aside their award, if they proceed without the knowledge of the party, and without giving him an opportunity to be heard, or if they decide without any evidence. But here the parties had been fully heard by counsel, and upon full proof before the original arbitrators, and the same evidence and written arguments had, by the consent of the complainants, been laid before the third arbitrator. The answer so expressly states, and in this respect it is responsive to the bill, which charges that no such consent was given in any way.

But when a new arbitrator was chosen, the complainants had the right to adduce additional testimony and additional arguments. A knowledge of the difficulties that prevented the agreement, or even of a difference of character or intelligence in the new arbitrator, might make such course very desirable. And it was as much misconduct in the arbitrators to shut them out from this right, as it would have been to proceed in the first place without any hearing.

I am aware that the English courts have held that arbitrators may state the case to an umpire chosen by them, and that if the parties do not request to be heard anew the award will not be disturbed. *Hall* v. *Lawrence*, 4 *T.*

*R.* 589; *Tunno* v. *Bird,* 5 *B. & Ad.* 488, are such cases. The first seems, in the meagre report we have of it, to lay down this doctrine without qualification. In *Tunno* v. *Bird,* Lord Denman puts it on the ground, that the party knew that the umpire was proceeding to decide on the former depositions, and permitted him to go on, taking his chance of the award, and that it was too late to object afterwards; he should have applied to be heard. *Russell on Arbitration* 231, puts the decision of both cases on this ground.

In *Salkeld* v. *Slater,* 12 *Ad. & Ell.* 767, all three judges concur that it is the duty of the umpire to hear the evidence anew and not receive it from the arbitrators, unless it is clearly waived by the agreement or conduct of the parties. The same principle applies to the right to produce new evidence and to be heard by counsel.

In this case there was no waiver by the conduct of the complainants; after they heard of the intention to proceed without the presence or knowledge of the parties, as soon as it could reasonably be done they presented their protest, and sued out and served an injunction; both were done before the award. There was no acquiescence. If such agreement was entered into as stated in the answer, that the arbitrators, when the third was chosen, should proceed on the evidence and arguments before produced, and the party should not have notice or be heard anew, it might obviate the difficulty. But so far as the last part of this allegation is concerned it is new matter and not responsive to the bill; and it is the established rule in this court that an injunction will not be dissolved for new matter in avoidance alleged in the answer, not responsive to the bill.

It was so held by Chancellor Williamson in *The Morris Canal and Banking Company* v. *Jersey City,* 1 *Beas.* 227, and in *The Society* v. *Butler, Ibid.* 264; and this principle was approved by the Court of Appeals in reviewing that case, *Ibid.* 506; by the same Chancellor again in *Green* v. *Pallas, Ibid.* 267; also, by Chancellor Green in *The Society* v. *Low,* 2 *C. E. Green* 19, and in *Huffman* v. *Hum-*

*mer, Ibid.* 263. The same doctrine is held in *Minturn* v. *Seymour,* 4 *J. C. R.* 499, and stated as law, in *Hilliard on Injunctions* 55. The counsel of the complainants deny the truth of this allegation, and they are entitled to be heard by proof.

The conclusion at which I have arrived on this point, renders it unnecessary to examine the other questions on which the complainants place their right to maintain the injunction.

It is, besides, one of those cases which appeals strongly to the discretion of the court to retain the injunction until the hearing. The denials of the other grounds may then be disproved. If dissolved, and the defendants should by proceeding at law receive the award, the complainants might be without remedy, even if on the final hearing the award should be set aside.

Motion to dissolve refused.