Leslie v. Leslie.

EDWARD LESLIE

v.

JOHN S. LESLIE.

1. A bill, attacking an award on the ground that the arbitrators refused to hear material evidence, must set forth the rejected evidence with sufficient fullness to enable the court to judge whether it was material or not.

2. It is essential to the validity of an award that it be confined to those things which are submitted, and that it shall not extend to those which are not within the terms of the submission.

3. An arbitrator may, under some circumstances, intentionally decide contrary to law and still have his award stand.

4. Awards are to be expounded favorably and every reasonable intendment made in their support.

5. Where an excess of power appears on the face of the award, the award will be declared void to the extent that the arbitrators have exceeded their authority. If the void can be separated from the valid without doing injustice, the good will be upheld and the bad rejected, but if a separation cannot be made without doing injustice, the whole will be declared void.

On demurrer.

*Mr. John W. Griggs*, for the demurrant.

*Mr. Eugene Stevenson*, for the complainant.

VAN FLEET, V. C. .

The object of this suit is to procure a decree annulling an award made by two arbitrators. This relief is sought on two grounds—*first*, that the arbitrators exceeded their authority, and, *second*, that their award is uncertain and inconclusive; in other words, that it is neither certain nor final. Another ground is attempted to be alleged, namely, that the arbitrators refused to hear material evidence, but the bill, on this point, is so defective in essential respects as to state no ground of action whatever. All that it avers is, that the arbitrators refused to hear several material witnesses which were offered on behalf of the complainant, but what facts these witnesses would testify to is not stated, nor is it alleged that the arbitrators were informed what was the nature or character of the evidence they would give. So that, if it be assumed that everything alleged in the bill, with the requisite legal certainty, is true, still it is apparent that the bill fails to show that the arbitrators refused to hear a single word of material evidence. The pleader, it is true, says they did, but that is all he says. He gives his opinion respecting the nature of the rejected evidence, but not the evidence itself. The issue which the bill tenders on this point is wholly immaterial. The question is not, did the arbitrators refuse to hear evidence which,

in the judgment of the pleader, was material? On the contrary, the only question that can be raised touching the action of the arbitrators in rejecting evidence, which can affect the validity of the award, is, did they refuse to hear evidence which, in the judgment of the court, was material? That question, it will be observed, cannot be tried on this record, because, as it now stands, it contains neither a statement of the rejected evidence nor even a hint of what it was.

The causes which led to the agreement under which the award in question was made, may be stated, with sufficient fullness for the purposes of the present discussion, as follows: The complainant and defendant owned the whole of the capital stock of the Leslie Brothers' Manufacturing Company, a corporation organized under the laws of this state, with a capital of $500,000, divided into five thousand shares of $100 each, and doing business in the city of Paterson, in the manufacture of steam snow-plows, locomotives and other machinery and appliances. Each owned two thousand five hundred shares of the stock of the corporation, and the defendant was its president and general manager, the complainant was vice-president, and a third person acted as secretary and treasurer. While the parties were thus equal in property and power, disputes arose respecting the conduct of the business of the corporation, which became so bitter and dangerous to its prosperity that both desired that a separation of their corporate interests should take place by the retirement of one of them from all participation in the affairs of the corporation. They were, however, unable themselves to agree upon any basis of settlement, but were willing to leave the question as to which one should retire, by the sale of his stock, and what the other should pay him for his stock, to be settled by arbitration. To accomplish these objects, the parties, by an agreement under seal, appointed two arbitrators and gave them power, in the language of the agreement,

"to decide and direct which of the said parties shall sell to the other all his capital stock of said company, and the terms upon which said sale shall be made, and how and when the same shall be paid for,"

.with additional power to carry their award into effect by an actual transfer of the stock. And to this end the agreement required the parties to deposit their stock, assigned in blank,. with the arbitrators, so that on the publication of the award the arbitrators might at once transfer the stock of the party that they decided should sell to the party that they decided should buy.. Both parties deposited their stock as the agreement required, and the stock of the complainant was, immediately after the publication of the award, transferred to the defendant.

The parties signed this agreement on the 20th day of April,. 1891, and three days afterwards, on April 23d, the arbitrators made their award. They awarded, in the first place, that the complainant should sell all his stock "and any and all his rights in connection with said company" to the defendant, and that the defendant should pay to the complainant $23,000. Eleven thousand dollars of this sum they directed to be paid, in the language of the award,

"in the following manner: the sum of $8,000 in cash within three days after the making of this award, and giving to the said Edward Leslie a receipt in full, up to this date, of all moneys due by the said Edward Leslie to the said John S. Leslie or to said company, which amounts we, the said arbitrators,. declare to be $3,000."

Six thousand dollars more were to be paid on or before May 1st,. 1892, the payment to be secured by a bond executed by the ..defendant, with a surety, who is named. The remaining $6,000· were to be paid on or before May 1st, 1893, its payment to be secured by the pledge of one thousand shares of the stock of the Leslie Brothers' Manufacturing Company. They also awarded, to quote the language of the award,

"to the said Edward Leslie a bonus of $1,000, to be paid on each rotary snow-plow hereafter built and sold by the said Leslie Brothers' Manufacturing Company, or its assigns, until the said sum of $1,000 is paid on fifty plows, after which number said payment of $1,000 shall cease to be made. * * * The aforesaid bonus of $1,000 is to be paid on the first day of May in each and every year upon all plows built and disposed of within the term of one year previous to the date of such payment, the first of such payments of bonus to be made on the first day of May, 1892."

The case is before the court on demurrer. All the facts given in the preceding statement are well pleaded, and must, therefore, for present purposes be considered as admitted.

The doctrine is obviously fundamental that it is essential to the validity of an award that it be confined to those things which, by the agreement of arbitration, are submitted to the judgment of the arbitrators, and that it shall not extend to those which are not within the terms of the submission. Caldwell says it is one of the requisites of a valid award that it be consonant to the submission. The award must not extend to persons or things beyond the scope of the submission. *Caldw. Arb. 226, 227.* And Kyd says the award must not extend to any matter not comprehended within the submission. Thus, if the submission be confined to a particular subject of dispute, while there are other things in controversy between the parties, an award which extends to any of these other things is void, as far as it respects them. *Kyd Aw. 141.* This principle has been recognized and enforced by both this court and the supreme court. *Young* v. *Executors of Young, 2 Halst. Ch. 450 ; Hazen* v. *Addis, 2 Gr. 333.* Nothing, it seems to me, can be clearer, both as a principle of sound law and of plain natural justice, than that where two persons submit, in plain and clear terms, one particular dispute or controversy to the determination of a third, as their judge, his authority must be considered to be inflexibly limited to a decision of that one particular matter, and that any attempt by him to pass judgment upon any other question must be held to be unauthorized and beyond his power, and consequently without the least legal force. The submission is the commission of the arbitrator. By force of it, he becomes a judge with absolute power over the things submitted to his judgment. So long as he acts uprightly and impartially, and keeps within the limits of his authority, and deprives neither party of a full and fair hearing, his judgments are unimpeachable and irreversible. He may do what no other judge has a right to do ; he may intentionally decide contrary to law and still have his judgment stand. This was so declared in *Bell* v. *Price, 2 Zab. 578, 590,* where Mr. Justice Carpenter, in pronouncing the judgment of the court of

·errors and ·appeals, said, in substance, that if arbitrators mean to ·decide according to law but mistake the law, in a material respect, and their mistake appears on the face of the award, or they admit it, the award will be set aside because it does not express their real judgment; but in cases where they do not intend to let the law govern their judgment, but to decide according to their own notions of what is just and right, the courts will not interfere, but allow their award to stand. *Caldw. Arb. 140; Kyd Aw. 351.* The reason that this is so is, that an award is the decision of a tribunal which the parties themselves create, and by whose judgment they .mutually agree, when they create it, that they will abide. As a general rule they are unlettered tribunals, at least without legal learning. They have been called rustic forums. The design of the parties in creating them is to have their disputes speedily and economically settled, by a decision which shall be final and unalterable. Economy and finalty are the controlling considerations which lead to their creation. It is manifest, that if the decisions of such a tribunal were subject to be tried by the strict rules of the law, an arbitration, instead of being an inexpensive mode of finally settling disputes would, in a majority of instances, be but the prelude to an expensive and protracted litigation. To avoid such consequences, it has become a settled principle of jurisprudence that awards are to be expounded favorably and every reasonable intendment made in their support. *Rogers v. Tatum, 1 Dutch. 281, 284.* But this principle has no application to a case where it is apparent on the face of the award that the arbitrators have exceeded their power, and pronounced judgment on a question not submitted to their decision. In such cases sound policy, as well as the safety of the parties, demands that it shall be presumed that what is not clearly granted was intended to be withheld. The parties, in creating such a forum, are at liberty to create it for a special designated purpose or for all purposes. No person should, therefore, be bound by the judgment of such a tribunal on a question which he had never consented that it should decide. As to both parties, the judgment of such a tribunal, on a question entirely outside of the matters submitted, is a mere act of usurpation, and hence

without the least legal force.  As was said by Mr. Justice Carpenter, in *Hoagland* v. *Veghte, 3 Zab. 92, 95:* "If an excess of power appears on the face of the award, the award will, undoubtedly, be void, either wholly or in part, according as the bad way may be separable from the good or otherwise.  If inseparable the whole must fall together."

Tried by this principle it seems to me to be well nigh undeniable that the award in question is void.  A single matter was submitted, namely, which one of the two parties should sell his stock to the other.  The primary object that both wanted to accomplish was, that one should become the owner of all the stock, in order that he might be freed from all interferences from the other.  Each was desirous to obtain complete control of the corporation.  That could only be effected by one making sale of his stock to the other.  But which should sell—who should go out—was the point of difficulty about which they could not agree, but which they were willing to submit to arbitration.  That was the principal thing submitted, but, as necessarily incident to it, the arbitrators were authorized to prescribe the terms of sale and decide how and when the stock of the one that they decided should sell should be paid for by the other.  Which one should sell his stock, and how much the one, that it was decided should become the buyer, should pay the other for his stock, comprehended everything that the parties intended to submit, and everything which, according to the fair and reasonable construction of the terms of the submission, they did submit.  The award, however, extends beyond this and embraces another and entirely different matter.  It attempts to take jurisdiction, not only of the previous dealings between the parties, but also those between the complainant and Leslie Brothers' Manufacturing Company.  It decides that the complainant is indebted to the defendant, "or to said company," in the sum of $3,000, and directs that the defendant shall pay that sum to the complainant by giving him a receipt in full for all moneys due by the complainant to the defendant, "or to said company," and that such receipt shall operate as a payment of $3,000 of the amount awarded to the complainant for the value of his stock.  The defendant is thus authorized

to pay $3,000 of the sum awarded to the complainant for his stock by offsetting a debt which, the arbitrators decide, is due from the complainant to either the defendant or to the corporation, but to which, judging from the language of the award, they did not know, nor attempt to ascertain or decide. The award, in this respect, is extremely uncertain, and evinces, in addition, such gross carelessness as, unexplained, goes far to justify the belief that the arbitrators were guilty of misbehavior. But it is not necessary to put the decision on that ground. An excess of power is apparent on the face of the award. The arbitrators have exceeded their jurisdiction. Their award extends to matters not submitted to them. They had no authority to examine into the dealings of the parties with each other and decide which one was indebted to the other, nor to decide whether or not the complainant was indebted to the Leslie Brothers' Manufacturing Company. They did, however, and to that extent their award is, beyond all doubt, a nullity. And this is a case in which it is clear that the void is inseparable from the valid. If the arbitrators had simply found that the complainant was indebted to defendant in a certain sum of money, and then directed the complainant to pay that sum to the defendant, without giving the defendant the right to offset such sum against the sum awarded to the complainant for his stock, or making the payment of one sum in anywise dependent on the payment of the other, it would not have been at all difficult to have separated the void from the valid, and to have given effect to the good and to have declared the bad without legal force. But here a separation of the bad from the good will result in this glaring injustice; the complainant will be deprived of $3,000 of the sum fixed as the value of his stock. Where such consequences must ensue, if an attempt be made to effect a separation, the void and the valid one are, in fact and in law, inseparable, and the whole award must be declared to be void. The first ground, then, on which the bill impeaches the award must be held to be sufficient to entitle the complainant to the decree he asks.

The complainant is also entitled, in my judgment, to prevail on the second ground. This award is uncertain and inconclusive.

Lack of certainty in such an instrument renders it also, as a gen-
eral rule, inconclusive, for, as a recent writer on the law of arbi-
tration, has aptly said, "An award which is not certain, is not
final, for where there is doubt there can be no finalty." *Morse
Arb. 384.* But a single test, under the second objection, will be
applied to the award in question, and that will be, is it final?
Finalty is a quality that is absolutely essential to the validity of
an award. Kyd, in his work on *Awards, page 208* says:

"As the principal object which the parties have in view, when they submit
to arbitration, is to prevent any future litigation on the subject of the submis-
sion, no rule is better founded than that which requires that an award should
be final."

And Chief-Justice Hornblower, in pronouncing the opinion of
the supreme court in *Hazen* v. *Addis, 2 Gr. 333, 337,* after quoting
the above rule laid down by Kyd, added: "It [the award] must
be an absolute conclusive adjudication of the matters in dis-
pute." This principle is elementary and has been universally
recognized. It requires no support from adjudged cases; a few,
however, will be cited to show how it has been applied. *Pedley*
v. *Goddard, 7 Term 69, 73; Carnochan* v. *Christie, 11 Wheat.
446, 466; Waite* v. *Berry, 12 Wend. 377, 380; Fletcher* v. *Web-
ster, 5 Allen 566, 567; Lincoln* v. *Whittenton Mills, 12 Metc. 31,
34; Ballie* v. *Edinburgh Oil Gas Light Co., 3 Cl. & F. 639, 655.*
The only duty imposed by the submission on the arbitrators,
in behalf of the party that they decided should sell his stock,
was to fix the price which he should be paid, and how and when
the same should be paid. They decided that the complainant
should sell. This gave him a right to a price. They had power
to decide what it should be, but no power to fix an uncertain or
indeterminate sum, nor to so arrange the payment of the sum
that they fixed as the price, that the amount the complainant
would be entitled to receive should depend not on their judgment
but on the will or future action of the defendant or some other
person. They could not delegate their powers, nor so exercise
them that the amount which the complainant should receive, as
the price of his stock, should depend upon chance or the future

Leslie *v.* Leslie.

action of a third person. Their duty required them to fix a price that was certain and definite in amount, that could not be changed in any way by anything short of the mutual consent of the parties, and also to prescribe such terms of payment that the complainant's right to the specific sum, awarded as the price of his stock, should be just as firmly, finally and unalterably established as was the defendant's right to the stock which such price represented. The price was not, however, fixed in this way. As to more than two-thirds of the sum which the arbitrators apparently intended to allow the complainant for his stock, no present certain right to it is created by the award. On the contrary, whether or not a right to it will ever arise, is made to depend entirely on what the Leslie Brothers' Manufacturing Company, or its assigns, may see fit to do in the future. If this corporation or its assigns shall, subsequent to the date of the award, build and sell snow-plows, the complainant will be entitled to be paid for each plow built and sold $1,000, until he shall have received $50,000, but if none are built and sold he will be entitled to nothing. This is what the arbitrators, by their award, say on this point:

"We award to Edward Leslie a bonus of $1,000, to be paid on each rotary snow-plow built and sold by the Leslie Brothers' Manufacturing Company or its assigns, until the sum of $1,000 is paid on fifty plows."

It will be observed that the word "bonus" is used instead of "price." In its strict sense, that word means "good," but in its popular sense it is used to denote a premium for a loan. The arbitrators manifestly used it as the equivalent of "price." There can be no doubt that they meant that the complainant should, in case fifty plows were made and sold, be entitled to be paid $50,000 as part of the price of his stock. They had no power to award a bonus or premium, and unless the rule, that awards are to be expounded favorably and every reasonable intendment made in their support, is applied, and it is, in consequence, held that "bonus" here means "price," it would be very difficult to say that this award should not be declared void for excess of power. It will also be noticed that the award does not say, in

express terms, who shall pay the $50,000—whether it shall be paid by the defendant or the corporation—but as the corporation is not a party to the submission and the defendant is, and as he, by the decision of the arbitrators, became the purchaser of the complainant's stock, and the money to be paid constitutes part of the price of that stock, it would seem to be entirely clear, under the rule above stated, that it must be conclusively presumed that the arbitrators meant to impose the duty of payment on the defendant. *Lutz* v. *Linthicum, 8 Pet. 175, 177*. But nothing becomes payable, by the terms of the award, unless plows are made and sold, and whether they will be or not depends entirely on the will of the defendant. He is now the owner of all the stock of the corporation and has absolute control over its life and fortunes. No duty is expressly put upon him to preserve its corporate existence, nor is he bound to see that it continues the business of making and selling plows. He may dissolve it, or change or discontinue its business, or sell all his stock and leave the country. If the corporation continues to make plows, he may cause it to make few or many, just as he pleases—his will is absolute law as to the number it shall make, or whether it shall make any—and he may cause those it does make to be leased and not sold, and thus try to evade the payment of any part of the $50,000. It may be said that if any of these things are done with a fraudulent purpose, the complainant may obtain redress by an appeal to the courts. Say that this is so, the obvious effect of the concession is to show that the award is not final. Instead of preventing future litigation on the subject of the submission, it becomes, in consequence of its inconclusive character, the direct cause of it. But suppose the defendant should decide to discontinue the manufacture of snow-plows capriciously, or because he thought the business was not profitable, though it was so in fact, would not his decision absolutely bar the complainant's right under the award? The fatal vice of this award, in my judgment, is that it leaves the question, whether more than two-thirds of the price awarded to the complainant for his stock shall be paid or not, to be decided by the will or future action of the defendant. It puts it in the power of the defendant to

deprive the complainant, by perfectly lawful means, of a part of the price of his stock. That cannot be done. Nothing can be less conclusive than an award in this form. *Pedley* v. *Goddard, 7 Term 69*, is quite in point. There the arbitrators awarded to the plaintiff a certain sum of money, to be paid by the defendant in a specified time, unless the defendant made an affidavit that he had not received a certain part of the sum awarded, and, if he did, that part should be deducted and the defendant only required to pay the balance. Lord Kenyon declared the award was not final, and, therefore, invalid, remarking that the arbitrators, instead of determining the points in dispute between the parties, had left one sum in dispute to be decided by the person who, of all others, was the least qualified to decide it.

The demurrer must be overruled, with costs.