The bill in this case was filed by the Hoboken Manufacturers' Railroad Company against the Hoboken Railroad Warehouse and Steamship Connecting Company and prays that a decree be made setting aside the award of arbitrators made on May 8th, 1941, and also that the defendant be restrained from proceeding with an action at law begun by the defendant against the complainant in the Hudson County Court of Common Pleas to recover the amount set forth in the award of the arbitrators.
Defendant, on or about June 19th, 1906, entered into a written lease with complainant whereby complainant is required to pay by way of rent a tonnage charge based on the amount of freight transported by it and also required to pay the taxes imposed upon the defendant company.
A dispute arose as to the terms of the lease. Defendant contends, under the lease, that the complainant is obligated to pay the income, undistributed profits, excess profits and capital stock taxes imposed by the government upon the defendant. It appears that the complainant reimbursed the defendant for the income, undistributed profits and excess profits taxes paid for the years 1933, 1934 and 1935 but has not reimbursed it for the succeeding years. The defendant filed returns for the capital stock tax for the years 1933 to *Page 113 
1939, inclusive, and paid the said taxes for the years 1933 to 1937, inclusive, but claimed exemption from the said tax for the years 1938 and 1939 and also filed a claim for a refund of all such taxes previously paid. It is not clear whether the complainant reimbursed the defendant for any of these items.
In regard to the tonnage payments mentioned in the lease, the defendant claims that the lease obligated complainant to include in the total tonnage, upon which the rent is computed, certain freight known as "Seatrain Lighterage" freight and, in addition, obligated the complainant to include twice certain freight known as "In Transit" freight. Since the year 1936 the complainant has not included the said "Seatrain Lighterage" freight in computing its rental. It has included only the "In Transit" freight once in its computations. It is not clear whether this "In Transit" freight has been included since the year 1936 or since some other date.
The lease contains a provision for arbitration under article XI, which reads as follows:
"Eleventh. In the event of differences arising between the Lessor and Lessee, such differences, or any matter which it is provided in this lease shall be determined by arbitration, shall be submitted to the arbitration of three disinterested persons, one of whom shall be chosen by each of the parties hereto, and the third by the two arbitrators so chosen; and the award and finding of said arbitrators, or of any two of them, shall be final and conclusive on any questions or matters so submitted to them. In case an arbitration is not otherwise arranged, either party desiring such submission to arbitration shall notify the other party in writing of the matter which it desires to submit to arbitration designating its arbitrator in such notice. Within twenty days thereafter the party thus notified shall name its arbitrator, and notify the other party of such selection. The arbitrators thus selected shall immediately proceed to select the third arbitrator as aforesaid, and with him to consider and determine all matters submitted. In case the party notified of the desired submission to arbitration, shall fail, upon due notification, to name an arbitrator, the arbitrator selected by the other party shall have the right to proceed alone and determine the matters thus submitted, and his award shall be final and conclusive upon the parties hereto.
"In the event that the two arbitrators first selected shall be unable to agree upon the third arbitrator within thirty days after the selection of the second arbitrator, either party hereto, upon giving ten days' notice in writing to the other party, or to the arbitrator selected by such other party, may apply to the Court of Chancery of New *Page 114 
Jersey, or to the Circuit Court of the County of Hudson, in the State of New Jersey, for the appointment of a third arbitrator, and any arbitrator appointed by either of such courts upon such application shall have the same powers and duties as if appointed by the two arbitrators first selected as hereinbefore provided."
On or about October 31st, 1938, defendant informed the complainant of its desire to submit the matter to arbitration in accordance with the above recited provisions in order to determine the following questions:
"1: Under the provisions of said lease is the Hoboken Manufacturers' Railroad Company obligated to pay to or for the account of the Hoboken Railroad Warehouse and Steamship Connecting Company the following taxes:
"(a) The Federal Corporation income taxes which the Hoboken Railroad Warehouse and Steamship Connecting Company is required to pay to the Federal Government:
"(b) The undistributed profits surtax which the Hoboken Railroad Warehouse and Steamship Connecting Company is required to pay to the Federal Government:
"(c) The federal capital stock tax which the Hoboken Railroad Warehouse and Steamship Connecting Company is required to pay to the Federal Government.
"2: Under the provisions of said lease is the Hoboken Manufacturers' Railroad Company obligated to include in its annual report and to pay to the lessor, as additional rent, at the stipulated rates, on certain tonnage sometimes known as `Seatrain Lighterage,' `In Transit' and `Local.'"
At the same time defendant notified complainant that it had designated John J. Hickey as its arbitrator. On or about November 1st, 1938, complainant agreed to submit the questions above set forth to arbitration and selected E.H. Burgess as its arbitrator. Messrs. Hickey and Burgess were unable to agree upon a third arbitrator and the defendant applied to this court for the appointment of such arbitrator. The court named Mr. Thomas R. Armstrong as such.
Thereafter the three arbitrators held five hearings at which both parties were represented by counsel and presented evidence concerning the matters in dispute. On or about May 6th, 1941, Messrs. Armstrong and Hickey submitted their *Page 115 
award in writing wherein they found that the complainant is obligated to pay all the taxes mentioned in the matters submitted which included the "Seatrain Lighterage" freight and the "In Transit" freight. No evidence was offered relative to the "Local" freight and no findings were made as to the same. The award does not specify that the "In Transit" freight is to be counted twice although I judge that such is the effect of the award.
Mr. Burgess, the arbitrator appointed by the complainant, did not sign the award but signed a statement under the award as follows:
"I am unable to concur in the foregoing findings, conclusions and award of the majority, expressed without accompanying opinion, and have therefore set forth in the memorandum hereto attached and made a part thereof the reasons which have impelled me to dissent therefrom.
E.H. BURGESS."
The reasons referred to by Mr. Burgess appear to be in the nature of a brief and are contained on thirty-nine pages of legal cap wherein he goes into detail and cites many cases relative to the questions involved and then reaches the conclusion that he is not in accord with the findings of the other two arbitrators.
On or about May 15th, 1941, defendant demanded payment of the amount awarded by the two arbitrators which demand was refused by the complainant. Thereupon the complainant was served with a summons and complaint in an action at law in the Hudson County Court of Common Pleas whereby judgment was demanded for the amount set forth in the award made by the said two arbitrators. Complainant then filed this bill of complaint and obtained an order to show cause with an ad interim restraint restraining the defendants from proceeding with the action at law.
The solicitors of both the parties to this suit consented to continue the restraint and submit the matter to this court on briefs. Counsel agreed that this court should determine the matter on a motion to strike out the bill of complaint for want of equity. *Page 116 
The submission of the matter to arbitration appears to be a common law arbitration arising out of the contract between the parties as it was entered into prior to the time that the present statutes became effective. The arbitration statute of this state is patterned after the English statute, St. 9 and 10, WilliamIII ch. 15, which was enacted in 1698. Arbitration, however, existed prior to the statute of William III and was an ancient practice at common law. The statute merely provides a more convenient method of enforcing awards and permitting them to be transformed into judgments of a court of record. The main object of the statute was to place controversies out of court on an equal footing with those in court. Ford v. Potts,6 N.J. Law 388.
While I find no New Jersey cases so holding, the generally recognized rule is that unless statutes abrogate the common law in the matter of arbitration, either expressly or by implication, the parties are still at liberty to enter into a submission as at common law. 5 C.J. Arb. Award § 5. From the statute now in effect, R.S. 2:40-1 et seq., it appears that the legislature did not intend to abrogate the common law on the subject. This must be so because the legislature, as late as 1923, found it necessary to enact another statute concerning arbitrations which now appears in R.S. 2:40-10 et seq. This statute of 1923, however, is not applicable to the contract under consideration for the reason that it was enacted subsequent to the execution of the contract. The matter before me, therefore, must rest upon the rules of the common law. The legislative enactments, in the main, have been merely declaratory of the general rules which existed at common law. The question as to when a court will set aside an award of arbitrators is, therefore, to be determined upon the rules laid down by the English courts as well as by those enunciated by the courts of this state.
After the enactment of the statute of William, all persons who desired to end a controversy for which there was no other remedy except by personal action or suit in equity, were permitted to agree that their submission of the matters in dispute to arbitration should be made a rule of any court of record and the court chosen by the parties would then *Page 117 
enter a rule that such submission and award would be conclusive upon the parties. After such entry the award would only be set aside for "corruption or other misbehavior in the arbitrators or umpire." 2 Chitty's Blackstone 18. Before the statute the only method of obtaining relief against an award, where the arbitration was by consent of the parties, was by a bill in equity. The jurisdiction of equity, however, was not taken away by the statute. It still continued, subject to the exception that where the submission had been made a rule of another court, the relief must be sought in that court. Watson, Arb. Awards*232. The law courts, since the passage of the statute, have uniformly followed equitable principles in determining whether there had been "corruption or other misbehaviour" on the part of the arbitrators. The great majority of arbitration awards found in the reports covering the last 250 years, are cases arising out of arbitrations which were by rule of court.
In early times, arbitration by agreement of the parties was not looked upon with favor and courts manifested a jealousy against that method of settling disputes privately, and on occasions disregarded the agreement made by the parties, assumed jurisdiction of the matter and undertook to determine the matters in dispute on the ground that it was against public policy to permit parties to deprive themselves of the right of resort to proper legal tribunals for the submission of their controversies. This view, however, as far as I have been able to determine, has not been entertained in New Jersey. As early as 1797, Chief-Justice Kinsey, in Fennimore v. Childs, 6 N.J. Law 386, said:
"Courts of justice have long manifested a strong inclination to support the decisions of arbitrators, who are judges of the parties' own choosing * * *."
The bill of complaint in this case challenges the award of the arbitrators on the ground that they attempted to decide disputed questions according to law and that their application of the law is incorrect. While equity may set aside an award which is the result of a plain mistake of the law, it will not do so in every instance. Where parties voluntarily refer a question of law to arbitrators instead of calling upon *Page 118 
a court to decide it, equity will not interfere. Young v.Walter, 9 Ves. 365. See, also, Morse Arb. Awards 314;Kirten v. Spears, 44 Ark. 166, 173. In the last mentioned case the court said:
"If the parties wanted exact justice administered according to the forms of law, they should have allowed their case to take the usual course. But for reasons satisfactory to themselves, they have chosen to substitute for the courts of law a private forum, and there is no injustice in holding them bound by the result."
See, also, Tyler v. Dyer, 13 Me. 41, 48, wherein the court said:
"Having submitted to a judge chosen by themselves, the parties give to his acts an authority which the courts would not allow to their own."
This court said in the case of Leslie v. Leslie, 50 N.J. Eq. 103,108, that,
"The design of the parties * * * is to have their disputes speedily and economically settled, by a decision which shall be final and unalterable. Economy and finality are the controlling considerations which lead to their creation. It is manifest, that if the decisions of such a tribunal were subject to be tried by the strict rules of the law, an arbitration, instead of being an inexpensive mode of finally settling disputes would, in a majority of instances be but the prelude to an expensive and protracted litigation. To avoid such consequences, it has become a settled principle of jurisprudence that awards are to be expounded favorably and every reasonable intendment made in their support. Rogers v. Tatum, 1 Dutch. 281, 284."
A court of equity, however, will grant relief against an award which is challenged as contrary to law in the following instances: (a) where the arbitrators are bound, by the submission, to decide in conformity with the rules and principles of the law; or (b) where the arbitrators have intended to follow the law, but have mistaken it in a material respect. See Bell
v. Price, 22 N.J. Law 578; Leslie v. Leslie, supra; WestJersey Railroad Co. v. Thomas, 21 N.J. Eq. 205, 208; Ruckman
v. Ransom, 23 N.J. Eq. 118, 120; Morse Arb. *Page 119 Awards 300; Kyd Awards 351; 5 C.J. Arb. Award § 469; 3rd Am. Jr.Arb. Award § 149.
Complainant argues that at the time of the submission of the matters to the arbitrators, the parties agreed that the only matter for determination was the legal effect of the language and that the arbitrators were under duty to decide only that legal effect. I find nothing in the record which indicates that the parties agreed that the arbitrators were to determine only the legal effect of the language contained in the lease. Complainant says under the language of the award, to wit: "We find under the provisions of said lease, c.," that it is apparent the arbitrators attempted to set forth the rights and liabilities of the parties in accordance with the legal effect of the language of the lease. This argument falls for the reason that the meaning of the submission is that the arbitrators were to decide what the parties intended by the terms of the lease and were not bound by the submission to concern themselves with the legal effect of the language of the lease. As to the award itself, there is nothing therein which shows an intention on the part of the arbitrators to decide the matters in dispute according to settled principles of law. It may be that the dissenting arbitrator intended to be bound by legal rules but his findings cannot in any way bind the other two. If the arbitrators voluntarily admit mistakes or if a mistake is apparent on the face of the award, equity will grant relief, but not otherwise. Pom. Eq. Jur. (5th ed.) § 871;Bispham Eq. (11th ed.) § 173; Bell v. Price, supra; Leslie
v. Leslie, supra. In the case of Ruckman v. Ransom, supra, Vice-Chancellor Dodd said:
"The doctrine is, that if arbitrators refer any point to judicial inquiry by spreading it on the face of the award, and they mistake the law in a palpable and material point, their award will be set aside. But, in general, being the chosen judges of the parties, they are judges of the law as well as of the facts, they are not bound to award on mere dry principles of law, but may do so according to the principles of equity and good conscience. Nor will courts compel them to disclose the grounds of their judgment, nor disturb their decisions when made, except upon very cogent reasons. 2 Story Eq. §§ 1454, 1455, 1457." *Page 120 
See, also, 5 C.J. Arb. Award § 471; Morse Arb. Award 300.
Arbitrators generally are not bound to decide questions of law.5 C.J. Arb. Award § 469, citing Bell v. Price, supra;Ruckman v. Ransom, supra. The intention of arbitrators to decide questions of law must be apparent and not be inferred. 5C.J. Arb. Award § 470. See, also, section 265. An arbitrator is not bound to state the grounds of his decision and if he is silent as to the law it cannot be inferred that he is wrong.Watson Arb. Award *165. If, on the other hand, arbitrators state the rules of law upon which their conclusions are based, such statement is sufficient proof that they intended to decide the matters according to law, in which case courts of equity may set the same aside if a mistake in the law appears. 5 C.J. Arb. Award § 472.
I have reached the conclusion that the arbitrators did not undertake to be bound by settled principles of law in arriving at their determination. There is no charge of fraud or of lack of good faith on the part of the arbitrators. Therefore, the parties are bound by the decision under the arbitration which they voluntarily selected.
Mr. Thomas R. Armstrong filed an ex parte petition asking this court to make a reasonable allowance to him for his services as arbitrator. While Mr. Armstrong was named as an arbitrator by this court it was done by consent of both parties. The court was merely the medium through which the parties to the suit sought to have a third arbitrator appointed because of the inability of the parties or the two arbitrators to agree upon a third. There is no fund in court from which such services could be paid and it seems to me that this court cannot, under the circumstances, fix his fees. Such a claim can be enforced in an action at law.
 I will advise a decree in accordance with the above views. *Page 121