Kinsey C. J.
These are motions to show cause why two awards between the same parties, the one in an action of covenant, the other of debt should not be set aside. To these awards three exceptions have been fded, but the opinion of the court having been formed upon one of them, renders a minute examination of the others unnecessary, A number of affidavits, have been read and a great variety of evidence brought before the court; the material facts however are shortly these. It appears that the referees after hearing the parties, and forming their opinions found some difficulty in drawing up the ‘awards with legal precision; it was- thought proper therefore to have them drawn up by Mr. Leake, and in order that this should be done, the referees adjourned over their meeting for another day, when the awards were to be approved of and signed. It does- not appear that they afterwards met pursuant to adjournment, but the reports were carried to each of them separately, and executed at their own places of residence. No suspicion seems to be entertained with regard to the integrity and purity of the proceedings; the reasons for their not holding the subsequent meeting are given freely and are satisfactory. The characters of the arbitrators are fair and unimpeached, and all the parties in the business are presumed to have believed that they were acting strictly within the line of their duty.
I own that I am a great friend to arbitrations; I believe them to be frequently productive of real advantage, and they are not to be hastily or inconsiderately set aside. I approve in the highest manner of the liberality with which courts of justice have reviewed their proceedings, particularly in modern times, but where any corruption — misbehaviour—or plain mistake of law or fact appears, courts of justice are bound to set them aside. If exceptions of this kind were not to be admitted, and these evils corrected, awards would indeed as Lord Hardivicke expresses himself, prove arbitra *146 ry, too much so for a free government. There is perhaps no mode of trial less objectionable than that by jury, yet Lord Mansfield thought that it could hardly have subsisted to his time, if courts did not occasionally preserve its purity unimpaired, and restrain its wanderings by granting new trials. For this reason I have no difficulty in pronouncing' the expression attributed to Lord Holt in Salkeld 73, not to be law, especially as applied to the case, and exceptions then, before the court. “ A party shall not come and say that the arbitrators have not done him justice, and put the court to examine it.” In that case the complaint was, that the arbitrators had not allowed the party time to produce his witnesses. The report of the same case in a book of much superior authority (a) shows, the three other Judges were, against him. In the case of Sheppard v. Brand, (b) Lord Hardwicke set aside the award because he thought that supporting it would be “ of dangerous example.” The money taken in that case was not pretended or suspected to have been paid or received from any sinister motives; the language employed by Lord Hardwzcke, “ let their characters be otherwise never so unexceptionable;” and “ this is a matter of so tender a nature that even the appearance of evil in it is to be avoided,” proves there was no imputation thrown upon their integrity. This case then is a strong one to prove, that arbitrators must conduct themselves with caution and propriety, until they have completely executed the trust reposed in them, otherwise their proceedings will be open to the most serious and fatal objections. I do not myself think the first exception is supported by the testimony, and here I cannot avoid expressing my disapprobation of the manner in which these affidavits have been taken. Each witness should be examined as to the facts which have come under his cognizance, and he should tell them in his own way, not merely to swear to what has been sworn by another. Four of the affidavits appear to be exact copies of each other, as to material parts of the testimony, and this circumstance renders them suspicious and objectionable.
*147 As vo the second exception, I can find no case t« prove that the fact even if true would be sufficient to vitiate the award. Kycl (a) says, “ there is no case to this purpose, nor ** does it at all appear a sufficient reason for setting aside an award; the arbitrator employs the party’s attorney as his “ own, and if tbis objection were good it is apprehended <£ a great many awards might be set aside that are perfectly “ fair.” The case of Burton v. Knight (b) does not prove it. In that case, there were other facts much more material which induced the court to set aside the report. The most that can be made of it is, that in connexion with other circumstances it had some weight, of itself I consider it as entitled to none.
But there appears another objection arising on the facts proved, not mentioned in the argument, but which is material m determining the present motions. The question I mean is whether an award thus drawn up, carried separately to each of the arbitrators' — separately examined and signed by them, is such an award as ought to be confirmed.
Some principles are dcducible from the cases which bear upon this question.
I take it to be a principle of law, that whenever a power or jurisdiction is delegated to two or more, it must be executed jointly and not separately. The judges must meet together, they ought to confer together, their decision ought to be the result of a joint conference, and should itself be a joint act. If they inquire separately, or decide separately it is altogether void, (c) This principle runs through a variety of cases, a few only of which I shall cite, but enouhg to prove the doctrine as applicable to all judicial acts.
By the Stat. 13 and 14. Car. 2. cap. 12. sec. 1. two Justices of the peace are authorised to remove paupers to the place of their settlement. In order to ascertain where this place of settlement is, the exercise of judicial functions is necessary, since it depends on the provisions of statutes and decisions of *148 cdurts of Justice. So early as the l%th year of William oci it was held necessary for both to join in the examination, as. well as in the Order for removal; (a) the examination of one and the removal by both was held ill.
In % Salkeld 478. an order of Bastardy was held ill and. quashed for the same reason.
In the case of the King v. Wykes (b) the .same principle was recognized; and the whole court were clearly of opinion that in cases of removal, there ought to be a joint examination, and this by the same Justices who sign the order, because it is an act of judgment.
In Billings v. Prinn and Delabere (c) where two Justices had separately examined a woman with regard to filiating a bastard, and had separately signed the warrant to commit her; the court said, the case is too clear to bear an argument, and that there would be no use in appointing two or more persons to exercise judicial powers unless they are to act together.
The law has been carried even further in The King v. The Inhabitants of Hamstall Ridware. (d) By the 43 El. cap. 3, The parish officers, by and with the consent of two Justices, are authorised to bind out poor children. An indenture was separately assented to by two Justices, but they did not assent to, or sign their names at the same time or in the presence of each other. lord Kenyon, said that the rule might be sometimes attended with inconvenience, but that it had long been settled that the concurrence of the justices is not necessary when the act to be done is merely ministerial, but they must confer together, and form a joint opinion, where the act is of a judicial nature.
These cases are sufficient to prove the law upon this point to be established and settled, the application of the principle to the case under consideration may not be so obvious. It appears that the arbitrators did examine jointly, and didJ form a joint determination in favour of the defendant, and it may be objected that the executing the award is but ?, mere formality. But we think otherwise.
*149 ist Though the arbitrators had agreed on an award in favour of the defendants, yet they cannot be said to have agieed to an awai'd not then drawn but left to be drawn up by the counsel. They never did, nor could agree to any award that should be drawn; the approbation of the report then, when placed on paper by the counsel, and drawn up with the necessary legal formality, when shown to them afterwards, was an act of judgment, and according to the cases cited, should have been a joint act.
%d It is not only a judicial act but also a material part of their business. Mr. Leake might have drawn twenty reports, and any one of the arbitrators had a right to exercise his judgment on each, and to reject all or any of them.
Perhaps also it may be objected that the cases cited" are good law when confined to publick officers to whom judicial authority is delegated, but not to arbitrators who are private judges created and vested with power by the parties themselves. This argument would prove too much and be equally forcible against calling in question the decisions of these tribunals under any circumstances. The rule that has been laid down to regulate the exercise of judicial authorities, is founded in reason and common sense; not wantonly established to create difficulties, but to provide against consequences injurious to society. It was thought neccssax-y to carry these powers properly into execution, and I cannot perceive or imagine any inconvenience would arise from subjecting private persons to the same wholesome rule.
Nor can I perceive any substantial ground for exempting private judicatories, from the restrictions which the wisdom of the law has deemed necessary to be imposed upon pub* lick officers.
The tenor of the rule of reference, proves that the authority was delegated, that it should be exercised jointly axxd not separately. An adherence to the rule in the case of awards will be of real service. It will prevent and be a guard against imposition and fraud. When arbitrators meet and act together upon any part of their judicial business, they stand as guards on the conduct of each other; — they have *150 an opportunity of proposing their own difficulties and doubts, and hearing those of their associates; — to hear and weigh the reasons given, and to form a judgment with the greatest pos - sible advantage. — All the books suppose the acts of arbitrators to be performed jointly; separate meetings have always been disapproved of; want of notice of meeting, is one of those irregularities laid down as sufficient to vacate an award made under a rule of court.
-If we wander from the strictness of the rule that has been laid down viz, that in the execution of judicial powers all must join, where shall we stop? If the referees may separately approve of and execute an award, upon what possible grounds can they be prevented from inquiring and coming to a determination separately. On the contrary if we adhere to the rule throughout, the consequence will be as Lord Kenyon says in The King v. Forrest (a) (a case similar in its nature to those before cited,) the arbitrators will be able to assist each other, and the result of their conference will be the ground of their determination.”
In the present case it appears that the arbitrators at their meeting agreed to report in favour of the defendants generally,, and there is no suggestion that there were any written instructions given by them to the counsel who was to put their ideas in legal language as to the precise nature and extent of the awards. It was natural that he should draw them up as strongly as possible in favour of his client, and indeed so he has done; unquestionably then their approbation of these papers required reflection, deliberation and judgment, and should have been done jointly. Nor are the affidavits of the arbitrators in opposition to this idea. Those who have been sworn say, that the evidence before them was such as to induce a belief that the article was done away and of no effect before the death of the testator, language certainly not perfectly free from ambiguity. It seems rather to allude to the fact of cancellation mentioned in some of the papers, than to its actual performance. Under all the circumstances therefore of this case, and for the reasons above given, our *151 opinion is that the awards be set aside, and the parties allowed another opportunity of settling their differences.
Bulb absolute, (a)

 3 Ld. Raycl. 857.

 Hardew. 48,

 P. 349. (Phil. Edit, of 1808.)

 2 Vern. 514.

 Note. — See upon this point Kyd 106. Dalling v. Matchett Barnes 57. Kingston v. Kincaid, C. C. U. S. Note Kyd U. S. and Kunckle v. Kunckle, 1 Dall 364.

 2 Salk. 483.

 Andrews 231.

 2 Bl. Rep. 1017.

 3 T. R. 38Q,

 3 T. R. 40.

 Note. — See the cases of Guirdley v. Barker, 1 Bos. and Pull. 229. (Day’s Edit.) Cook v. Loveland, 2 Bos. and Pull. 31.