Leslie *v.* Leslie.

JOHN S. LESLIE, appellant,

*v.*

EDWARD LESLIE, respondent.

1. A party to an arbitration agreement may estop himself from questioning the jurisdiction of the arbitrators, even in a case where they have clearly exceeded their jurisdiction, by appearing before them, admitting that he is indebted to the other party, and agreeing that the arbitrators shall take such debt into consideration and award how it shall be discharged.

2. But an arbitration agreement cannot be changed or altered unless the minds of the parties meet and mutually assent to the change or alteration.

On appeal from a decree advised by Vice-Chancellor Van Fleet, who filed the following conclusions:

The legal questions involved in this case have already been considered and decided. In disposing of the demurrer filed to the bill, it was held that the award shows, on its face, that it is fatally uncertain and inconclusive, and also that, on a comparison of the award with the arbitration agreement, it appears that the arbitrators exceeded their authority and made an award in respect to matters not submitted to them. *Leslie* v. *Leslie, 5 Dick. Ch. Rep. 103.* To complainant's case, standing in this position, the defendant makes two defences—*first,* that the complainant, after he had seen the award and fully understood what it contained, assented to its execution, and should, therefore, be adjudged to have estopped himself from disputing its validity; and *second,* that the complainant was responsible for the arbitrators having exceeded their jurisdiction, the averment in that regard being that the complainant appeared before the arbitrators and admitted that he was indebted to the defendant in the sum of $3,000, and agreed that the arbitrators should take this debt into consideration in making their award and direct how it should be paid or discharged. The precise form in which these defences are

alleged appears in an opinion written on a motion to strike out parts of the defendant's answer, reported in 5 Dick. Ch. Rep. 155.

The burden of proof is on the defendant. Unless the evidence in support of the defence preponderates in the defendant's favor he cannot prevail, and a decree must go in favor of the complainant. The case is destitute of the least proof in support of the first defence. There is not only no evidence going to show that the complainant assented to the execution of the award, but, on the contrary, it is shown by the evidence of every witness giving testimony on the subject, that from the moment he knew what the award contained, every word he uttered and every act he did plainly indicated that he was dissatisfied with it and did not intend to abide by it. The award was made by two arbitrators, one chosen by the complainant and the other by the defendant. Within two or three hours after the complainant had read the award, it is proved that he charged the arbitrator he had selected with having been improperly influenced by his associate, and stated that he was not done with the matter—he had plenty of money—obviously meaning that he meant to try to undo, by litigation, the wrong which he believed had been committed against him. The arbitrator chosen by the defendant stated, while on the witness-stand, that the complainant had said to him, within less than four hours after the publication of the award, that he had pulled the wool nicely over the eyes of the other arbitrator. He also testified that he had tried to persuade the complainant to abide by the award by accepting a check for $7,700 and some other papers tendered in execution of the award, but that the complainant promptly and offensively refused to receive them. It is also shown, by the decided weight of the evidence, that when the arbitrator chosen by the defendant said to the complainant, within less than three hours after the publication of the award, that he had better be satisfied with the award, the complainant instantly replied, in the hearing of the defendant, that he would never be satisfied with it. The fact is that there is not a speck of evidence supporting the defence of assent. On the contrary, all the evidence in the case

shows plainly that the complainant, both by conduct and speech, from the moment he knew what the award contained, manifested, in the most unmistakable manner, strong dissatisfaction with it, and that he would not perform it, nor allow it to be performed, if he could prevent it. The complainant undoubtedly believed that the award did him great injustice, and his conduct, from the moment he knew what the award contained, throughout evinced strong dissatisfaction and a deep sense of wrong.

Nor is the other defence proved. The arbitrators strayed beyond their jurisdiction in this: They attempted to determine in what amount the complainant was indebted to the defendant, and also in what amount the complainant was indebted to the Leslie Brothers Manufacturing Company, when, in fact, neither of these matters had been submitted to them. Indeed, the Leslie Brothers Manufacturing Company was not a party to the arbitration agreement, and, consequently, could neither be heard by the arbitrators nor bound by anything they did. After the arbitration agreement had been signed, the arbitrators, before undertaking the duty imposed upon them, attempted to induce the complainant and defendant to agree upon an amicable adjustment of all their disputes and difficulties, including the moneys drawn by them respectively from the Leslie Brothers Manufacturing Company. Such an agreement was drawn by one of the arbitrators. When completed, the complainant was unwilling to sign it. He wanted time for consideration, and after he had considered it he refused to sign it. It was understood that the proposed amicable agreement should embrace all differences and disputed matters between the parties. While this agreement was in course of negotiation, allusion was made to a due-bill for $1,000, which the defendant claimed to hold against the complainant, but which the complainant alleged to be spurious, and also to the state of their respective accounts with the Leslie Brothers Manufacturing Company, and also as between themselves. The evidence shows that while this agreement was under discussion the complainant told one of the arbitrators that the due-bill was a forgery, and also that the same fact was shortly afterwards communicated to the other arbitrator. It was in this

way that the arbitrators obtained knowledge of the matters in respect to which they exceeded their jurisdiction.

There is not a single shred of evidence going to show that the complainant admitted that he was indebted to the defendant. On the contrary, the proof shows that whenever the due-bill was mentioned he denounced it as a spurious paper. Nor does the evidence show that the complainant uttered a single word indicating that he consented or was willing that the arbitrators should, in making their award, take cognizance of any debt that he owed the defendant. The utmost extent to which the evidence on the part of the defendant goes, on this point, is this— that the defendant laid evidence of his debt before the arbitrators and the complainant said nothing. The defendant's own evidence furnishes a fair sample of all the testimony on this point in the case. He says, during the progress of the arbitration, one of the arbitrators asked if it was understood that they were to settle all disputes, so that there should be no further trouble or disturbance, and that he said in answer : " I told them I wanted all disputes settled, and no more wrangling or fighting about it, and I understood my brother [complainant] agreed to the same thing." His counsel then put this question : " Did he say anything or consent by any motion ? He was present, wasn't he ? " To which the defendant answered : " Yes, sir ; but I cannot remember his words or whether he said anything at all or not ; but he didn't raise any objection in my presence."

The arbitrator chosen by the defendant says that both parties at one time consented that all matters in difference should go into the settlement, but he cannot say whether such consent was given while the amicable agreement was under discussion or while the arbitration was in progress. While the other arbitrator testifies that he is unwilling to say that the complainant did not say, when the due-bill was presented, that that was a matter between his brother and himself, with which the arbitrators had nothing to do, and that if he owed his brother anything he was good for it, and his brother could sue him for it. The complainant swears positively that that is what he did say, and his testimony is corroborated. A female stenographer who took notes

of parts of the evidence offered before the arbitrators, says that there was a sum in dispute between the parties, which the complainant seemed to think was outside of the jurisdiction of the arbitrators. She said she was unable to repeat the complainant's language, but she knows that he disputed the claim and that the substance of what he said was that the claim was one which the arbitrators had no right to decide.

This *résumé* embraces all the material evidence on this point. It proves a denial and not an admission, and a protest against jurisdiction and not a consent to jurisdiction.

The offers to purchase laid by each of the parties before the arbitrators were admitted in evidence, not as tending to show that the terms of the arbitration agreement had been enlarged or changed, but merely for the purpose of giving the complainant's offer such weight as it might appear to be entitled to, as a contradiction of his evidence when he said that he had never consented in any way that the arbitrators might, in making an award, depart from the terms of the arbitration agreement. But the counsel of the defendant, on the argument, contended that these offers were entitled to an entirely different effect from that which was ascribed to them when they were admitted in evidence. His claim is that they enlarged the agreement and gave the arbitrators authority to make the award they did as to the way in which the defendant should pay the complainant for more than two-thirds of the value of his stock. I cannot adopt this view. It appears to me to be utterly fallacious. No change or alteration could be made in the arbitration agreement after it was signed except the minds of the parties came together and assented to the change. Their minds must have met in assent. Nothing of that kind was done or even attempted. So far as appears, neither of the parties ever even thought of changing the agreement. Each offer was made separately and secretly, with no intent or thought of changing the agreement, but manifestly with the sole design of inducing the arbitrators to award the stock of the other to the one who made the offer. How far the complainant's offer might have had the effect to estop him from attacking the validity of the award in

Buzby v. Darnell.

case the defendant's stock had been awarded to him upon the terms of his offer, it is, of course, unnecessary, in the present condition of the case, to consider.

The award must be declared void. The complainant is entitled to a decree, with costs.

*Mr. John W. Griggs*, for the appellant.

*Mr. John W. Harding*, for the respondent.

PER CURIAM.

Decree affirmed, for reasons given in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, ABBETT, DEPUE, GARRISON, LIPPINCOTT, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, KRUEGER, SMITH—12.

*For reversal*—DIXON—1.

---

| 52 | 337 |
| 65 | 682 |

MARK H. BUZBY et al., executors of Mary M. Wilkins, deceased, appellants,

*v.*

HENRY DARNELL, guardian of Joshua W. Hurley, respondent.

On appeal from a decree of the ordinary, whose opinion is reported in *Darnell* v. *Buzby*, *5 Dick. Ch. Rep. 725*.

*Mr. Mark R. Sooy*, for the appellants.

*Mr. Jerome B. Grigg* and *Mr. Samuel H. Grey*, for the respondent.

22