IGOE BROTHERS, INCORPORATED, a corporation, complainant-respondent,

*v.*

NATIONAL BEN FRANKLIN FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, et al., defendants-appellants.

[Submitted October term, 1931. Decided May 16th, 1932.]

*Messrs. Wolber & Gilhooly* (*Mr. Edward J. Gilhooly,* of counsel), for the complainant-respondent.

*Mr. Arthur T. Vanderbilt,* for the defendants-appellants.

The opinion of the court was delivered by

CASE, J.

The bill was to reform an award that had been made on numerous fire insurance policies under an arbitration agreement between the complainant (the insured) and the defendants (the insurers) for the adjustment of losses in profits and fixed charges caused by a fire.

The fire occurred April 9th, 1925. The insurance was "on the use and occupancy" of the described premises and each policy provided that if there were a total or partial suspension of business caused by fire, the insuring company would be liable "for the actual loss sustained, consisting of net profits on the business which is thereby prevented, such fixed charges and expenses pertaining thereto as must necessarily continue during the total or partial suspension of business and such expenses as are necessarily incurred for the purpose of reducing the loss under this policy" during the period which would be required to rebuild the premises damaged by fire. On June 21st, 1926, the insured and the insurers entered into an arbitration agreement, by the terms of which each party selected an appraiser. The agreement provided that the appraisers should first select a competent and disinterested umpire; that in the event of their failure to agree between themselves, they should submit their differences to the umpire, and that the award in writing of any two of these three persons should determine the amount of the loss. There was a further provision that if either of the parties should feel aggrieved in that the appraisers (or one of the appraisers and the umpire) had taken into consideration in arriving at their award matters which were improper or illegal for their consideration, such party should, within ten days from the entry of the aforesaid award, institute proper proceedings in the court of chancery for the purpose of correcting and reforming the award in accordance with the practice of that court. The appraisers were unable to agree and they submitted their differences to the selected umpire,

Charles F. Lynch. The umpire, on September 26th, 1927, submitted a preliminary report. On November 18th, 1927, he filed his final report which, on the signature of the appraiser for the insurers, affixed the following day, became the official award. The award was thus made long after the passing of the events concerning which the controversy is waged; it was not a guess against the future. The award embraced two items, one for the profits lost because of the fire and the other a reimbursement for such fixed charges, sometimes called "overhead," as continued to run against the insured notwithstanding the interruption in production. The award was:

"1. That the assured should be allowed net profits of $301.45 per day for 200 days, or ....... ....... $60,290.00
2. That the assured be allowed fixed charges of $194.18 per day for 100 days, or .................... 19,418.00

Amount of award ..................... ...... $79,708.00"

The assured filed its bill of complaint in the court of chancery setting out certain grievances, chiefly—as amended —that the umpire, having determined that the length of time of the suspension of business was two hundred manufacturing days, and having allowed for loss of profits during that period, should have allowed compensation for fixed charges throughout the same period, or $38,836 on this item as against the actual award of $19,418; that the finding by the umpire was the result of a mistake on his part and was not based upon any fact or data submitted to or before him; and that the award did not embody the real judgment of the umpire. The insurance companies answered denying these allegations and also filed a counter-claim wherein they asserted that the umpire had failed to embody his real judgment in the award in that he had overstated the profits and should have allowed $43,274 instead of $60,290 for that item. The matter was referred by the court of chancery to a special master to take testimony and report recommendations as to

what decree should be made. Testimony was taken, and the report came in. The decree thereon, reciting that the umpire and the one appraiser had made a mistake in determining the loss, increased the amount allowed for fixed charges from $19,418 to $30,563.20, so that the award as reformed gave $60,290 to the insured for lost profits and $30,563.20 for fixed charges; and the decree carried further allowances of $1,000 to the special master, $2,500 counsel fee, with costs, to the solicitors for the complainant, and $627 to the complainant, "being the amount paid by the complainant for the testimony taken before the special master."

Both the complainant and the defendants appealed from the decree, the complainant's appeal being from the allowance of $30,563.20 rather than $38,836 for fixed charges. The defendants' appeal was from the entire decree. While the argument is mainly on the defendants' appeal, at the same time the complainant does, in its brief, argue that the decree of the court of chancery should be modified by allowing the larger amount for fixed charges.

The moving parties, however, are the defendant insurance companies. Two alleged errors by the court below are argued on their brief: first, that the court increased the award for loss of fixed charges, and second, that the court disallowed defendants' counter-claim; and complaint is made of the allowances.

Under point one it is argued that the finding by the umpire and appraiser that complainant's loss of fixed charges was $19,418 is conclusive and that the modification thereof by the lower court should be set aside.

The general rule with respect to an award by arbitrators was recognized by this court in *Kaplan* v. *Niagara Fire Insurance Co., 73 N. J. Law 780, 789,* as follows:

"Even in equity, except in cases of accident or mistake, such decision is final unless corruption or misconduct be imputed to them."

Our own court of chancery, speaking through Vice-Chancellor Leaming in *Collings Carriage Co.* v. *German American Insurance Co., 86 N. J. Eq. 53, 56,* said:

"If through fraud, accident or mistake it (viz., the award) does not embody the real judgment of the parties who return it, it is not their award. With errors of judgment on the part of the parties making the award this court has no concern."

So long ago as 1855 the supreme court of the United States said in *Burchell* v. *Marsh, 58 U. S. 344; 15 L. Ed. 96:*

"Courts should be careful to avoid a wrong use of the word 'mistake,' and by making it synonymous with mere error of judgment, assume to themselves an arbitrary power of awards," and that court further observed in the same opinion that a willingness to disturb an award which was within the submission and, after a full and fair hearing, contained the honest decision of the arbitrators "would be a substitution of the judgment of the chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation." No fraud, misconduct or accident is charged against the award. Nor, having reference to the reservations contained in the arbitration agreement, is it claimed that the umpire and the appraisers took into consideration matters that were improper or illegal. That leaves mistake as the single available ground for setting aside the award.

When it is sought to set aside an award upon the ground of a mistake committed by arbitrators, it is not sufficient to show that they came to a conclusion of fact erroneously, however clearly it may be demonstrated that the inference drawn by them was wrong. It must be shown that, by some error, they were so misled or deceived that they did not apply the rules which they intended to apply to the decision of the case so that upon their own theory a mistake was made which has caused the result to be something different from that which they had reached by their reason and judgment. The foregoing rule was pronounced by the supreme judicial court of Massachusetts in *Davis* v. *Henry, 121 Mass. 150.* It is, we think, a correct statement of the pertinent legal principle. We find nothing in *P. L. 1923 ch. 134; 1 Cum.*

*Supp. Comp. Stat. pp. 9-21, an act concerning arbitrations and awards,* that, on the record presented, diverges from the views expressed above.

Was it incumbent upon the umpire and appraisers, having found that two hundred manufacturing days constituted the period which was required to rebuild the plant, that the pro-rated daily net profit was $301.45 and that the prorated daily fixed charges were $194.18, to allow not only for loss of net profits on that *per diem* for the full period but also for fixed charges during a like time? We think not. After the fire the insured set up a temporary manufacturing plant and did a limited business therein. The report, of which the award is a part, says:

"While it is my opinion that it would require two hundred days before the profit making facilities were restored, it is evident that since the assured continued manufacturing operations after the fire, these operations gradually absorbed the overhead charges and, in my opinion, an allowance of one hundred days of overhead would seem to be fair."

The meaning is plain and the theory is rational. The receipts from the manufacturing operations in the temporary plant, while not enough to produce a net profit, nevertheless brought in some money. A part of the fixed charges against which the companies insured was absorbed in the temporary plant and to some extent was met by the receipts therefrom. This element of loss was consequently reduced, and with reduction in loss came reduction in liability. The required period for reproduction of plant is, in effect, now conceded by the insured to have been correctly fixed at two hundred manufacturing days and the daily fixed charges are accepted as correct at $194.18. If nothing whatever had occurred to stop the flow of insured's money into unproductive "overhead" two hundred times $194.18, which the insured now contends for, would have been the limit of recovery. But it was found as a fact that some of this "overhead" was made to produce an income and that the loss thereon was partly stopped. The award, instead of meeting this lessened liability

by a reduction in the *per diem,* allowed a full *per diem* but shortened the number of days to correspond to the "absorption." We see no fault with this either in theory or in application. Those who made the award found as a fact that the allowance of one hundred days on this basis completely reimbursed the insured for his loss in fixed charges. Thus, as it seems to us, the umpire and his associate not only laid down a rational rule, founded in justice, but applied that rule to their decision, reaching a consistent result.

A careful examination of the record discloses no error of calculation, obvious on the face of such calculation or of the award, which should be corrected in order to give true effect to the theory upon which the award was made. Indeed such of the matters before the arbitrators as have also been placed before us give sound support to the finding. One of the exhibits in their hands was the report of James J. Hastings, an expert accountant, which says:

"With regard to fixed charges, we are of the opinion that the assured should be allowed the fixed charges for the period from the date of the fire to the date when the operations in the temporary wire mill [started within a month after the fire] were able to absorb the fixed charges in the cost of manufacture. From a study of the production reports and sales figures, we are of the opinion that this period did not exceed four months."

One hundred manufacturing days are the practical equivalent of four calendar months. We find no such mistake in the award as was within the province of the court of chancery to correct. On the case presented the award is conclusive on the allowance for fixed charges. The decree below is reversed in so far as it undertakes to reform the award.

The defendant insurance companies in presenting their second point appear to us to be wholly at variance with much of what has already been said. The award was based on a record of profits made by the insured over a period of two years preceding the fire, instead of the five-year period contended for by the insurers. That is said to be error. It was

a matter of judgment whether the fair measure of the profits which the insured lost because of the fire was to be found in the two-year table or in the five-year table or in some other tabulation. On such matters of judgment the award is conclusive. The same is to be said of the calculation which classed an item of disbursement as capital investment rather than operating expense; a controversy which, moreover, is beside the point as the determination bore solely on the profits for a year earlier than the above-mentioned two-year period. These were the only matters presented in support of the counter-claim. The counter-claim was properly dismissed. The decree below is affirmed in that respect.

The allowance to the special master for his services will be retained and made chargeable to both parties equally, and the reimbursement of $627 paid by the complainant for the testimony taken before the special master will be split and one-half thereof directed to be paid by the defendants; this, because the cause went to issue on the counter-claim as well as on the bill. The allowance of counsel fee and other costs to the complainant's counsel will be struck.

The decree as a whole will be modified to meet our views as herein expressed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 14.