IN THE MATTER OF ARBITRATION BETWEEN WILMER GROVER, JR., AND UNIVERSAL UNDERWRITERS INSURANCE COMPANY.

Argued January 8, 1979—Decided May 15, 1979.

222

Mr. *Robert C. Pollock* argued the cause for appellant, Universal Underwriters Insurance Company (*Messrs. Pollock* and *Brogan,* attorneys; *Mr. Peter R. Brogan,* of counsel).

Mr. *Donald W. Moore* argued the cause for respondent, Wilmer Grover, Jr.

The opinion of the court was delivered by

SCHREIBER, J. An arbitration was held before the American Arbitration Association to resolve a dispute between plaintiff, Wilmer Grover, Jr., and defendant, Universal Underwriters Insurance Company, pursuant to provisions in an insurance policy issued by defendant covering Grover's motorcycle. Subsequent to an award of $15,000, Grover sought to confirm and the Insurance Company to vacate that award in the Superior Court, Chancery Division. The Superior Court remanded the matter to the arbitrator for further hearings. After the rehearing the arbitrator reaffirmed his earlier determination and the Superior Court confirmed the award. The Appellate Division, one judge dissenting, affirmed. 151 *N. J. Super.* 403 (1977). Thereupon defendant appealed as of right. *R.* 2:2–1(a).

The two ultimate questions in this appeal are whether a policy coverage issue was properly before the arbitrator, and, if so, whether his award should be upheld.

The proceedings and facts are detailed in the Appellate Division opinion and need only be summarized here. Defendant had issued a liability policy to plaintiff covering his Kawasaki motorcycle. The policy was in effect on August 4, 1973 when plaintiff had a serious motorcycle accident. Ac-

cording to the plaintiff, he had been riding his motorcycle in an easterly direction on West New Road, South Brunswick, at 30 to 35 miles per hour when, as he began to negotiate a curve, a vehicle traveling in a westerly direction on the wrong side of the road threatened his passage and safety. Plaintiff veered to his right off the road onto the dirt shoulder and lost control of his motorcycle. He was apparently thrown into some split rail fencing and rendered unconscious. Within two minutes Police Officer Fenske came on the scene. Grover, still unconscious, was taken to Princeton Medical Center by the Monmouth Junction First Aid Squad.

When Fenske arrived, there was no one in the immediate area where Grover was lying, although there were people in the yard at a house nearby. The police officer's observations and measurements taken at the accident scene gave no indication that another vehicle was involved. He questioned Grover about one week later at the Medical Center. He obtained Grover's version of what occurred and inserted that information in the police report. Grover meanwhile had been issued a summons for not driving on the improved part of the roadway. On October 15, 1973 he pled guilty and was fined $10.

Grover's insurance policy contained an uninsured motorist provision under which the insurance carrier agreed to pay all the sums which the insured was legally entitled to recover as damages from the owner or operator of an "uninsured highway vehicle" because of bodily injury caused by accident and arising out of the use of such "uninsured highway vehicle." The coverage issue centers about the definition of an "uninsured highway vehicle." Within that category is a hit and run vehicle, which in turn is defined to include a vehicle which had no physical contact with the insured provided certain enumerated conditions were satisfied — the crucial condition pertinent here being that the "facts" of the accident "can be corroborated by competent evidence other than the testimony of any person having a claim under this * * * insurance as a result of such accident." Defendant

has contended throughout these proceedings that plaintiff never met this requirement.

The policy also provided that if the parties could not agree (1) that the insured was legally entitled to recover damages from the other party allegedly involved in the accident, and (2) if so, the dollar amount of those damages, then those issues were to be determined by arbitration. When Grover and defendant could not agree on these issues, Grover demanded arbitration and sought $15,000, the policy limit. The demand was made on an American Arbitration Association form which referred to disputes arising under the insurance policy provision involving uninsured or hit and run motorists. Defendant acknowledged the demand.

An arbitrator was designated and the hearings proceeded. It is clear that the insurance policy required arbitration on only two issues — liability of the "hit and run" motorist for the collision and damages which were stipulated at $15,000. Although no reporter was present so that a transcript is not available, we are satisfied that the parties submitted to the arbitrator not only those two questions, but also the basic issue of coverage under the policy.

There are several indicia which lead us to this conclusion. Plaintiff's formal demand for arbitration sought damages of $15,000, and either at the beginning or during the arbitration, defendant stipulated that plaintiff's damages were $15,000. Thus, both parties expected that if plaintiff prevailed, the arbitrator's award would be $15,000. But such an award had to be predicated on the underlying foundation that coverage existed. It is significant that neither party has asserted or claimed that the award was to be contingent upon a judicial finding of coverage. Further, the arbitrator certainly harbored the same understanding. Not only did his award contain no limitation, but on the subsequent rehearing, the arbitrator stated that "[t]he sole issue for determination [had been] the liability of the Respondent [defendant]."

When the award came before the Superior Court for confirmation, defendant's brief and argument centered about the contention that the arbitrator's determination was erroneous, not because the arbitrator lacked authority or jurisdiction to decide the issue, but rather because plaintiff had not adduced the factual proof necessary to support a finding of coverage. In his oral argument before us defendant's counsel conceded that the testimony and argument before the arbitrator concerned the underlying dispute of coverage.

It was because of defendant's contention that plaintiff had not furnished the arbitrator with sufficient competent corroborative evidence of the existence of the other vehicle that the trial court held the award would have to be vacated if the only corroborative evidence before the arbitrator was the police report. However, it believed that if plaintiff's recital of events to the police officer was admissible as an exception to the hearsay rule, such as a spontaneous and contemporaneous statement under *Evid. R.* 63(4), then the necessary competent corroboration would have been produced. Since it was not apparent on the face of the award or otherwise what other evidence the arbitrator had considered, the trial court ordered that the matter be resubmitted to the arbitrator for a rehearing to establish the admissibility of plaintiff's statement to the police officer. The trial court also observed that the contract required the award be based on a factual finding "corroborated by competent evidence other than the testimony of" the plaintiff and that the arbitrator had to comply with the terms of the agreement.

At the rehearing Officer Fenske and Grover testified. Fenske described what he saw when he arrived at the scene, most of which had been substantially set forth in the police report. He testified that his investigation at the scene had not disclosed that another motor vehicle was involved. His only reference to other motor vehicles was that West New Road was well traveled and that he had passed cars before arriving at the scene.

The officer interviewed plaintiff within a week at the Princeton Hospital. There he obtained the description of how the accident occurred which he incorporated in the police report. Although plaintiff was under some pain, he was calm and related in a coherent fashion that an automobile had forced him off the road. Plaintiff testified that he was under sedation and in severe pain when he spoke with the police officer.

The arbitrator again awarded plaintiff $15,000. He conceded the inadmissibility of plaintiff's narrative statement in the police report, but held he was not bound by the rules of evidence. Accordingly, he admitted the report, and concluded it constituted sufficient corroboration.

The trial court then entered an order confirming the award, despite finding that the policy coverage question was not properly before the arbitrator. Relying upon the record made before the arbitrator, it reasoned that a plaintiff could never satisfy a requirement of corroboration other than his own statement. It went on to find sufficient corroboration in the fact that when the policeman arrived at the scene, he found that an accident had occurred.

The Appellate Division affirmed. It held that the arbitrator's determination was unassailable under *N. J. S. A.* 2A:24–8(a). Judge Larner in his dissenting opinion found that the arbitrator had no jurisdiction to determine the coverage issue, that the award was procured by "undue means," *N. J. S. A.* 2A:24–8(a), and that the arbitrator exceeded his "powers," *N. J. S. A.* 2A:24–8(d). We find that although the arbitrator did have jurisdiction, he "imperfectly executed" his power and the award was produced by "undue means."

We return to the first question of whether the arbitrator's jurisdiction included the authority to decide if defendant's policy provided coverage. The answer is found simply by analyzing what the parties have agreed should be submitted to arbitration. In the absence of a consensual understanding, neither party is entitled to force the other to arbitrate their dispute. Subsumed in this principle is the

proposition that only those issues may be arbitrated which the parties have agreed shall be. Stated another way, the arbitrator's authority is circumscribed by whatever provisions and conditions have been mutually agreed upon. Any action taken beyond that authority is impeachable. *Goerke Kirch Co. v. Goerke Kirch Holding Co.,* 118 *N. J. Eq.* 1, 4 (E. & A. 1935) ; *Wm. J. Burns Int'l Detective Agency, Inc. v. N. J. Guards Union, Inc.,* 64 *N. J. Super.* 301, 307 (App. Div. 1960), certif. den. 34 *N. J.* 464 (1961).

As indicated above, the insurance policy called for an arbitrator to decide if the no-contact "hit and run" motorist was responsible for the accident, and, if so, the amount due plaintiff for injuries sustained in the accident. See *Government Employees Ins. Co. v. Bovit,* 142 *N. J. Super.* 268 (App. Div.), certif. den. 71 *N. J.* 502 (1976) ; *N. J. Manufacturers Ins. Co. v. Franklin,* 160 *N. J. Super.* 292 (App. Div. 1978). Plaintiff's proofs at the first hearing before the arbitrator consisted only of his own testimony and the police report. Obviously that evidence could have been sufficient and indeed was sufficient to convince the arbitrator to agree with plaintiff on those two issues.

However, defendant, relying upon the policy language that existence of the other motor vehicle had to be corroborated by competent evidence other than the plaintiff's testimony, contended that plaintiff's proofs were insufficient. It thereby raised and relied upon the coverage issue. Coverage, having been raised by defendant and tried before the arbitrator without objection by plaintiff, thereby came within the scope of those matters which the arbitrator could properly decide. *Cf. R.* 4:9–2 which states that "[w]hen issues not raised by the pleadings and pretrial order are tried by consent or without the objection of the parties, they shall be treated in all respects as if they had been raised in the pleadings and pretrial order." The parties had the right to modify the arbitrator's authority by mutual agreement and to add another issue for his determination. That is what occurred here.

■ Defendant could have objected to arbitration of the coverage issue and protected its position in a number of ways. It could have instituted an action for a judicial decision on that issue and requested that the arbitration be stayed. *Cf. Battle v. General Cellulose Co., Inc.,* 23 *N. J.* 538 (1957), where the judicial proceeding was instituted at the conclusion of the arbitration in which the objecting party had refused to participate. See *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.,* 78 *N. J.* 144, 155 (1978). Defendant also had the choice of making an objection to the propriety of the arbitration on the ground of no coverage and participating in the arbitration proceeding under protest to decide the other two questions. See *Polshek & Associates v. Bergen Cty. Iron Works,* 142 *N. J. Super.* 516, 523 (Ch. Div. 1976). Use of either of these procedures would have preserved the issue of arbitrability for the court.

■ No possible confusion would have existed if at the outset of the arbitration proceedings the parties had agreed on the precise issues to be submitted to the arbitrator. See *American Arbitration Association, Suggestions for the Practice of Commercial Arbitration in the United States* 18–25 (1928); see also *Carhal Factors, Inc. v. Salkind,* 5 *N. J.* 485, 489–490 (1950). A submission not only serves the practicality of memorializing the issues, but also finalizes the matter submitted. See *Leslie v. Leslie,* 50 *N. J. Eq.* 103 111 (Ch. 1892); *W. Sturges, A Treatise on Commercial Arbitrations and Awards* 613–618 (1930); see also *Gerisch v. Herold,* 82 *N. J. L.* 605 (E. & A. 1912).

■ Having concluded that the arbitrator had jurisdiction to determine the coverage issue, we now turn to the validity of the award. We have previously pointed out that what may be arbitrable depends upon the consent of the parties. In addition it is the agreement of the parties which delineates the scope of that authority. Thus, where the parties have set forth in their agreement certain terms and conditions which must be satisfied, the arbitrator may not disregard those terms. He may not rewrite the contract terms for the parties. In the ab-

sence of directions to the contrary his award should be consonant with the matter submitted. Otherwise, the determination is contrary to the authority vested in him. Such an award cannot stand representing as it does an "imperfectly executed" power and having been procured by "undue means." *N. J. S. A.* 2A:24-8. *Cf. Held v. Comfort Bus Line, Inc.,* 136 *N. J. L.* 640, 641-642 (Sup. Ct. 1948) ("undue means" where arbitrator's mistake of law or fact results in failure of intent).

Here the arbitrator made a determination at the conclusion of both hearings contrary to the authority granted him in the contract. This he cannot do. The arbitrator was not free to disregard the contractual requirements of corroboration and competence.

█ We see no need to resubmit to an arbitrator the issue of whether corroborative competent evidence of the accident within the intendment of the contract was produced in the hearings. The issue poses only a legal question which the parties intended by their contract to be resolved in accordance with the law. *Cf. Government Employees Ins. Co. v. Bovit, supra.* Under these circumstances it is appropriate for us to resolve the issue and conclude the matter.

██ The policy affords coverage when a "hit and run" vehicle has caused an accident without physical contact when:

1. The identity of the owner or operator of the other vehicle cannot be ascertained.

2. The accident was reported within 48 hours to the police and a statement under oath shall have been filed with the company within 30 days after the accident describing the event.

3. If requested, the insured vehicle will be made available for inspection.

4. The facts of the accident can be corroborated by competent evidence other than the claimant's testimony.

The first three conditions apply to all "hit and run" accidents,

the last only to non-contact "hit and run" situations. Concededly, plaintiff satisfied the first three provisions.

The fourth condition requires corroboration other than by Grover's testimony that another motor vehicle forced his motorcycle off the road. From the standpoint of the insurance company, such corroboration serves a valid purpose by requiring some other tangible evidence of the existence of the unidentified vehicles and thereby eliminating some possible fraudulent claims. It is for this reason that some states exclude unidentified cars from their uninsured motorist coverage statutes. Annotation, "Uninsured motorist indorsement: validity and construction of requirement that there be 'physical contact' with unidentified or hit-and-run vehicle," 25 *A. L. R.* 3d 1299, 1303 (1969).

We agree with Judge Larner's analysis:

> The record does not reveal any other corroborative evidence, direct or circumstantial, that another vehicle proceeding in the opposite direction caused the claimant to veer off the road. The investigation at the scene by the police officer, the location of the insured vehicle near the fence and the injury to the insured, represent evidence that the assured left the road and crashed into a fence. None of these facts, however, corroborates the existence of a phantom car as the cause for the collision.
>
> Thus the occurrence of an accident involving a no-contact, hit-and-run vehicle rests solely upon the testimonial version of the assured himself and lacks the requisite corroboration mandated by the policy. On such a record there is no coverage and therefore no right of reimbursement under the policy. A court cannot disregard the plain terms of the policy in order to adopt a construction which favors the assured against the insurance company. See *Petronzio v. Brayda*, 138 *N. J. Super.* 70, 75 (App. Div. 1975). [151 *N. J. Super.* at 421–422]

To this we would add that the insured's version of the accident as related in the police report was not competent as well as not corroborative evidence under the insurance policy. Hearsay, objected to and which does not fall within an exception to the hearsay rule, is not competent evidence.

Our conclusion does not foreclose whatever rights plaintiff may have under the Unsatisfied Claim and Judgment Fund

Law. *N. J. S. A.* 39:6–61 *et seq.* Compare *Obst v. State Farm Mut. Auto. Ins. Co.,* 127 *N. J. Super.* 458 (App. Div. 1974), with *Beltran v. Waddington,* 155 *N. J. Super.* 264 (App. Div. 1978). We also note that the parties have not raised, briefed, or discussed the problem whether the corroboration clause in the policy conflicts with *N. J. S. A.* 17:28–1.1 which incorporates by reference the hit and run provisions of *N. J. S. A.* 39:6–78. Compare *Jones v. Heymann,* 127 *N. J. Super.* 542 (App. Div. 1974), with *Pasterchick v. Insurance Co. of No. America,* 150 *N. J. Super.* 90 (App. Div. 1977), and *Commercial Union Assurance Co. v. Kaplan,* 152 *N. J. Super.* 273 (Law Div. 1977).

Reversed. No costs.

PASHMAN, J., dissenting. The majority today rules that a court may substitute its conclusion for that of an arbitrator simply because it disagrees with his decision. In so holding, it not only departs radically from existing caselaw dealing with the nature of judicial review of arbitrators' awards but, more importantly, strips commercial arbitration of its basic value. In addition, the majority's interpretation of the "competent corroborative evidence" clause of the insurance policy is so restrictive as to render the non-contact hit-and-run coverage mandated by our Legislature wholly illusory. I am therefore compelled to register my dissent.

I

The concept of commercial arbitration is not of recent vintage. Rather, it comes to us from ancient roots. *See generally* Sayre, "Development of Commercial Arbitration Law," 37 *Yale L. J.* 595 (1928); Murray, "Arbitration in the Anglo-Saxon and Early Norman Periods," 16 *Arb. J.* 193 (1961). In the middle ages binding arbitration tribunals were located in each of the major markets. Their purpose was to provide for the expeditious resolution of mercantile disputes. *See* J. Cohen, *Commercial Arbitration and the Law,* 71–83 (1918).

Commercial arbitration today serves much the same purpose as it did in the middle ages. As our courts have noted, arbitration

* * * is a substitution, by consent of the parties, of another tribunal for the tribunal provided by the ordinary processes of law. The object of arbitration is the final disposition, in a speedy, inexpensive, expeditious, and perhaps less formal manner, of the controversial differences between the parties.

> [*Carpenter v. Bloomer*, 54 *N. J. Super.* 157, 162 (App. Div. 1959) (quoting *Eastern Engineering Co. v. Ocean City*, 11 *N. J. Misc.* 508, 510–511 (Sup. Ct. 1933)]

*See, e. g., N. J. Manu. Ins. Co. v. Haran*, 128 *N. J. Super.* 265, 269 (App. Div 1974); *Utah Const. Co. v. Western Pac. Ry. Co.*, 174 *Cal.* 156, 162 *P.* 631, 632–633 (Sup. Ct. 1917); *McRae v. Superior Ct.*, 221 *Cal. App.* 2d 166, 34 *Cal. Rptr.* 346, 349 (Dist. Ct. 1963); *Gaer Bros., Ins. v. Mott*, 144 *Conn.* 303, 130 *A.* 2d 804 (Sup. Ct. E. 1957); *First Nat. Bank v. Clay*, 231 *Iowa* 703, 2 *N. W.* 2d 85 (Sup. Ct. 1942); *Wilson v. Gregg*, 208 *Okl.* 291, 255 *P.* 2d 517 (Sup. Ct. 1953); *In re Smith*, 381 *Pa.* 223, 112 *A.* 2d 625 (Pa. Sup. Ct. 1955), app. dism., 350 *U. S.* 858, 76 *S. Ct.* 105, 100 *L. Ed.* 762; 5 *Am. Jur.* 2d, "Arbitration" § 1 at 518–519.

We have recognized that in order to effectuate the goal of providing an alternate forum for the speedy resolution of disputes, the arbitrator's powers must be broad and judicial interference with his role strictly limited. Thus, the arbitrator decides both the facts and the law, *Daly v. Komline-Sanderson Eng. Corp.*, 40 *N. J.* 175, 178 (1963) — by force of the agreement of the parties "he becomes a judge, with absolute power over the things submitted to his judgment," *Leslie v. Leslie*, 50 *N. J. Eq.* 103, 107 (Ch. 1892), aff'd 52 *N. J. Eq.* 332 (E. & A. 1894). Moreover, an arbitrator "may do what no other judge has a right to do; he may intentionally decide contrary to law and still have his judgment stand." *Id.* 50 *N. J. Eq.* at 107. *See Collingswood Hosiery Mills v. American Fed. of Hosiery Wkrs.*, 31 *N. J. Super.* 466, 471

(App. Div. 1954) (court will not interfere when arbitrator decides "according to his own concept as to what is just and right * * *").[1]

Not only is the arbitrator's power broad but, more importantly, judicial review of his decision is confined to narrow channels so that arbitration will be an end to litigation rather than the beginning of it. *Collingswood Hosiery Mills v. American Fed. of Hosiery Wkrs., supra,* 31 *N. J. Super.* at 473. *See, e. g., Igoe Bros., Inc. v. Nat'l Ben Franklin Fire Ins. Co.,* 110 *N. J. Eq.* 373, 377 (E. & A. 1932); *Ukranian Nat'l Urb. Ren. Corp. v. Joseph L. Muscarelle, Inc.,* 151 *N. J. Super.* 386, 401 (App. Div.), certif. den., 75 *N. J.* 529 (1977). In line with this policy, "every intendment is indulged in favor of the award and it is subject to impeachment only in a clear case. It will not be set aside merely because the court would have decided the facts or construed the law differently." *Carpenter v. Bloomer, supra,* 54 *N. J. Super.* at 168; *see Harsen v. Bd. of Ed. of West Milford Tp.,* 132 *N. J. Super.* 365, 373 (Law Div. 1975).[2]

The majority today ignores these principles of law and, instead, impermissibly substitutes its judgment for that of the arbitrator. Although properly finding that the arbi-

---

[1]This deference to the equitable power of an arbitrator was recognized as far back as Aristotle, who stated that:

The arbitrator looks to what is equitable, the judge to what is law, and it was for this purpose that arbitration was introduced, namely, that equity might prevail.

[Aristotle, "Rhetoric," Book 1, Chapter 13]

[2]This judicial partiality in favor of arbitration was, contrary to the experience in many states, evidenced in our courts at an early age. Thus, in 1792, Chief Justice Kinsey stated:

I own that I am a great friend to arbitrations; I believe them to be frequently productive of real advantage, and they are not to be hastily or inconsiderately set aside.

[*Moore v. Ewing & Bowen,*
1 *N. J. L.* 167, 169 (Sup. Ct. 1792)]

*See generally,* Boskey, "A History of Commercial Arbitration in New Jersey," 8 *Rutgers-Camden L. J.* 1 (1976).

trator had jurisdiction to assess whether "competent corroborative evidence" existed within the meaning of the parties' contract, it nevertheless disagrees with his factual determination and hence vacates the award. This it clearly may not do. *Daly v. Komline-Sanderson Eng. Corp., supra,* 40 *N. J.* at 178–179 ; *Bell v. Price,* 22 *N. J. L.* 578, 589–590 (E. & A. 1849) ; *Ukranian Nat'l Urb. Ren. Corp. v. Joseph L. Muscarelle, Inc., supra,* 151 *N. J. Super.* at 396; *Carpenter v. Bloomer, supra,* 54 *N. J. Super.* at 168; *Harsen v. Bd. of Ed. of West Milford Tp.,* 132 *N. J. Super.* 365, 371 (Law Div. 1975).

In an attempt to avoid application of these well-settled principles of law, the majority asserts that the arbitrator failed to take into consideration the contractual requirement of corroboration. See *ante* at 230–231. However, proof to the contrary can be found within the majority's own opinion. As the majority notes, no transcript was made of the first arbitral hearing. Moreover, no statement of reasons was given for the award. This lack of reasons, however, is not cause for vacating an award and, in fact, is entirely permissible. *See, e. g., Korshalla v. Liberty Mut. Ins. Co.,* 154 *N. J. Super.* 235, 238 (Law Div. 1977) ; *Harsen v. Bd. of Ed. of West Milford Tp., supra,* 132 *N. J. Super.* at 374; *Tave Construction Co., Inc. v. Wiesenfeld,* 82 *N. J. Super.* 562 (Ch. Div. 1964), aff'd o. b., 90 *N. J. Super.* 244 (App. Div. 1966). In such a case a court must assume, absent clear extrinsic evidence to the contrary, that the arbitrator has considered all legally relevant criteria. *Daly v. Komline-Sanderson Eng. Corp., supra; Bell v. Price, supra; Carpenter v. Bloomer, supra.*

Furthermore, the transcript of the second arbitration hearing clearly reveals that the arbitrator did consider whether Grover's testimony was corroborated by competent evidence. The majority specifically notes that the arbitrator found — correctly — that he was not bound by the formal rules of evidence and that he concluded that the report did constitute competent corroboration. Thus, the majority

cannot seriously urge that the issue of corroboration was not considered by the arbitrator. Rather, it vacates the award merely because it concludes that his determination was incorrect, thereby violating a principal tenet regarding judicial review of arbitral determinations — that a court "will not inquire whether the arbitrators have judged right or wrong upon the facts * * *." *Bell v. Price, supra,* 22 *N. J. L.* at 589.

The tragedy of the majority's opinion lies not in the fact that Wilmer Grover will be denied an arbitral award of which he is deserving. That is merely unfortunate. What is truly tragic is the precedent which is created for unbounded judicial review of arbitration proceedings. No longer will judicial review be "confined to matters of corruption or errors appearing on the face of the award." *Daly v. Komline-Sanderson Eng. Corp., supra,* 40 *N. J.* at 178. Instead, the parties will be in effect accorded a heretofore condemned hearing *de novo. See, e. g., Bell v. Price, supra,* 22 *N. J. L.* at 589. Appellate courts are hereby given a license to substitute their conclusions for those of the arbitrator on a mere determination that he was incorrect. Thus, arbitration will no longer be the speedy, inexpensive, and informal alternative to litigation which its proponents envisioned. Rather, it will merely constitute the springboard to litigation which we have formerly eschewed. *See, e. g., Igoe Bros., Inc. v. Nat'l Ben Franklin Fire Ins. Co.,* 110 *N. J. Eq.* 373, 377 (E. & A. 1932) ; *Ukranian Nat'l Urb. Ren. Corp. v. Joseph L. Muscarelle, Inc., supra,* 151 *N. J. Super.* at 401; *Collingswood Hosiery Mills v. American Fed. of Hosiery Wkrs.,* 31 *N. J. Super.* at 473; *Korshalla v. Liberty Mut. Ins. Co., supra,* 154 *N. J. Super.* at 240. One can only hope that the majority has acted aberrationally and that it will correct its error in future cases.

## II

Although the majority does not discuss in any depth the proper interpretation of the competent corroborating evi-

dence requirement, its conclusion that corroboration was lacking in this case impels me to add several thoughts on the subject.

The majority rules that it is the existence of another vehicle which must be corroborated rather than merely the occurrence of an accident. To this extent I concur. However, it also appears to hold that the circumstances of the accident and the existence of a police report do not create a sufficient inference that a "phantom" vehicle precipitated the incident. I must disagree with any such implication. It is enough that the evidence raise a credible belief that the accident occurred in the manner alleged by the claimant.

Two justifications underlie this broad interpretation. First, our policy of affording maximum coverage to insured members of the public dictates that language contained in an insurance policy be interpreted so as to protect the reasonable expectations of the average insured. *See, e. g., Bryan Const. Co., Inc. v. Employers' Surplus Lines Ins. Co.,* 60 N. J. 375 (1972) ; *Mazzilli v. Accident & Cas. Ins. Co.,* 35 N. J. 1, 7–8 (1961). It is obvious that the average insured would not expect coverage to depend upon technical application of strict rules of evidence.

Furthermore, an expansive reading of the corroboration requirement is necessary if the promise of non-contact coverage is to have any real meaning.[3] In most cases there will be no available eyewitnesses not involved in the accident. Scientific proof of the existence of another vehicle will likewise be difficult to come by. Thus, unless an inference may be raised

---

[3] I agree with the majority, however, that we should not presently decide whether the corroboration requirement violates the legislative mandate of coverage. Although this might appear anomalous in light of the fact that a finding of invalidity would change the outcome of this case, nevertheless the issue was neither briefed nor argued and, furthermore, requires the participation of the Commissioner of Insurance to fully resolve its complexities. Thus, I am satisfied that the question should be deferred until a more appropriate case arises.

by the conduct of the parties and a police investigation which corroborates portions of the claimant's story, coverage under the policy will, in contravention of our general policy, be severely curtailed.[4]

For the foregoing reasons I would affirm the judgment of the Appellate Division.

*For reversal*—Chief Justice HUGHES and Justices MOUNTAIN, CLIFFORD, SCHREIBER and HANDLER—5.

*For affirmance*—Justice PASHMAN—1.

---

[4] One might also question the efficacy, from the standpoint of preventing fraud, of the corroboration requirement. Had Grover alleged that the other vehicle had grazed part of his body or vehicle, no corroboration would be required. Acceptance of his credibility by the arbitrator would have sufficed. Inasmuch as damage to the vehicle is likely to occur in most such cases — here, for example, the vehicle hit a fence — it is difficult to see how lack of contact can be shown by the insurer. Thus, a restrictive interpretation of the corroboration requirement is likely to spawn fraud and prevarication rather than reduce it.